**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

NATIONAL SHOOTING SPORTS
FOUNDATION, Inc., et al.,

                         Plaintiffs,

      v.

LETITIA JAMES, in her official capacity as
New York Attorney General,

                       Defendant.

Case No.:   1:21-cv-1348 (MAD/CFH)

**Oral Argument Requested[1]**

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

[1] Because this case involves complex legal and factual issues, we respectfully submit that oral argument will aid the Court in rendering its decision.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND .................................................................................................3

    A.    Historical "Nuisance" Litigation Against The Firearms Industry ..........................3

    B.    The PLCAA ........................................................................................................3

    C.    *City of New York v. Beretta* ............................................................................5

    D.    New York's New Statute ....................................................................................7

LEGAL STANDARD .............................................................................................................9

ARGUMENT ..........................................................................................................................9

I.    Plaintiffs Are Likely To Succeed On The Merits .....................................................9

    A.    The Statute Violates The Supremacy Clause ....................................................10

        1.    The PLCAA Expressly Preempts New York's New Statute ...................10

        2.    The PLCAA Impliedy Preempts The Statute ...........................................12

    B.    The Statute Violates The Dormant Commerce Clause .......................................13

        1.    The Statute Is Facially Discriminatory .....................................................14

        2.    The "Practical Effect" Of The Statute Is To Control Commerce
            Outside New York's Borders .................................................................15

        3.    The Statute Fails The *Pike* Balancing Test ..............................................17

    C.    The Statute Violates The Due Process Clause ...................................................20

        1.    The Law Is Subject To A Strict Test For Vagueness................................20

        2.    The Law Fails The Test ..........................................................................21

II.    Plaintiffs Will Be Irreparably Harmed Absent Preliminary Injunctive Relief .................24

III.    The Balance Of Equities And Public Interest Favor Plaintiffs ..........................................25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adames v. Sheahan,*
   880 N.E.2d 559 (Ill. App. 2007) ............................................................................13

*Advance Pharm., Inc. v. United States,*
   391 F.3d 377 (2d Cir. 2004)..............................................................................21, 22

*Am. Sugar-Ref. Co. v. United States,*
   99 F. 716 (2d Cir. 1900)..........................................................................................22

*American Booksellers Foundation v. Dean,*
   342 F.3d 96 (2d Cir. 2003)................................................................................16, 17

*Arizona v. United States,*
   567 U.S. 387 (2012) ................................................................................................13

*BigStar Entm't, Inc. v. Next Big Star, Inc.,*
   105 F. Supp. 2d 185 (S.D.N.Y. 2000)......................................................................9

*Blackwelder v. Safnauer,*
   689 F. Supp. 106 (N.D.N.Y. 1988) .................................................................. 20-21

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.,*
   476 U.S. 573 (1986)................................................................................................17

*C&A Carbone, Inc. v. Town of Clarkstown, N.Y.,*
   511 U.S. 383 (1994)................................................................................................14

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.,*
   520 U.S. 564 (1997)................................................................................................17

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
   447 U.S. 557 (1980)................................................................................................21

*Chamber of Commerce of U.S. v. Whiting,*
   563 U.S. 582 (2011)................................................................................................10

*Chem. Waste Mgmt., Inc. v. Hunt,*
   504 U.S. 334 (1992)................................................................................................15

*City of New York v. Beretta U.S.A. Corp.,*
   524 F.3d 384 (2d Cir. 2008)..............................................................5, 6, 7, 11, 12, 15

*City of New York v. Taliaferrow,*
   158 A.D.2d 445 (2d Dep't 1990) ............................................................................21

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*City of Philadelphia v. New Jersey,*
    437 U.S. 617 (1978)...............................................................................................15

*Conn. Dep't of Envtl. Prot. v. Occupational Safety & Health Admin.,*
    356 F.3d 226 (2d Cir. 2004)....................................................................................24

*Delana v. CED Sales, Inc.,*
    486 S.W.3d 316 (Mo. 2016) ...................................................................................11

*Dimartile v. Cuomo,*
    No. 1:20-CV-0859 (GTS/CFS),
    2020 WL 4877239 (N.D.N.Y. Aug. 19, 2020) ................................................24, 25

*Estate of Kim ex rel. Alexander v. Coxe,*
    295 P.3d 380 (Alaska 2013).....................................................................................11

*Farrell v. Burke,*
    449 F.3d 470 (2d Cir. 2006)....................................................................................20

*Fulton Corp. v. Faulkner,*
    516 U.S. 325 (1996).................................................................................................14

*Geier v. Am. Honda Motor Co.,*
    529 U.S. 861 (2000).................................................................................................13

*Goetz v. Greater Georgia Life Ins. Co.,*
    649 F. Supp. 2d 802 (E.D. Tenn. 2009)...................................................................22

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972)...........................................................................................20, 24

*Hamilton v. Beretta U.S.A. Corp.,*
    750 N.E.2d 1055 (2001)..............................................................................12, 19, 23

*Healy v. The Beer Institute,*
    491 U.S. 324 (1989).................................................................................................15

*Ileto v. Glock, Inc.,*
    565 F.3d 1126 (9th Cir. 2009) .........................................................................3, 11, 12

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,*
    725 F.3d 65 (2d Cir. 2013)......................................................................................13

*Jefferies v. District of Columbia,*
    916 F.Supp.2d 42 (D.D.C. 2013)............................................................................11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Kassel v. Consol. Freightways Corp. of Delaware,*
    450 U.S. 662 (1981) ...................................................................................................18

*Ligon v. City of New York,*
    925 F. Supp. 2d 478 (S.D.N.Y. 2013) .......................................................................25

*Lynch v. City of New York,*
    589 F.3d 94 (2d Cir. 2009) .......................................................................................24

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996) ...................................................................................................10

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.,*
    883 F.3d 32 (2d Cir. 2018) .........................................................................................9

*N.Y. Progress & Prot. PAC v. Walsh,*
    733 F.3d 483 (2d Cir. 2013) .....................................................................................25

*New York ex rel. Spitzer v. Cain,*
    418 F. Supp. 2d 457 (S.D.N.Y. 2006) ......................................................................25

*Pac. Mut. Life Ins. Co. v. Haslip,*
    499 U.S. 1 (1991) .....................................................................................................21

*People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.,*
    309 A.D. 2d 91 (1st Dep't 2003) ...........................................................3, 12, 18, 19, 23, 24

*Perry St. Software, Inc. v. Jedi Techs., Inc.,*
    No. 20-cv-04539 (CM),
    2020 WL 6064158 (S.D.N.Y. Oct. 14, 2020) ..........................................................25

*Petereit v. S.B. Thomas, Inc.,*
    63 F.3d 1169 (2d Cir. 1995) .....................................................................................25

*Phillips v. Lucky Gunner, LLC,*
    84 F. Supp. 3d 1216 (D. Colo. 2015) .......................................................................11

*Pike v. Bruce Church, Inc.,*
    397 U.S. 137 (1970) ...................................................................................................17

*Prescott v. Slide Fire Sols., LP,*
    341 F. Supp. 3d 1175 (D. Nev. 2018) .......................................................................11

*Rhode v. Becerra,*
    445 F. Supp. 3d 902 (S.D. Cal. 2020) ......................................................................19

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Selevan v. New York Thruway Auth.*,
  584 F.3d 82 (2d Cir. 2009)............................................................................14

*SPGGC, L.L.C. v. Blumenthal*,
  505 F.3d 183 (2d Cir. 2007)..........................................................................13

*Statharos v. N.Y.C. Taxi & Limousine Comm'n*,
  198 F.3d 317 (2d Cir. 1999)..........................................................................24

*Town of Southold v. Town of E. Hampton*,
  477 F.3d 38 (2d Cir. 2007)........................................................................ 17-18

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982).....................................................................................20

*VIP of Berlin, LLC v. Town of Berlin*,
  593 F.3d 179 (2d Cir. 2010)......................................................................20, 24

*W. Lynn Creamery v. Healy*,
  512 U.S. 186 (1994).....................................................................................15

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. I § 8 ........................................................................................14

**STATUTES**

15 U.S.C. § 7901 ..........................................................................4, 11, 13, 18, 21

15 U.S.C. § 7902 ..............................................................................................10

15 U.S.C. § 7903 ..........................................................................4, 5, 8, 10, 14

MO. REV. STAT. § 571.014(A) ..........................................................................23

N.Y. GEN BUS. LAW § 898-a ...............................................7, 8, 10, 14, 22

N.Y. GEN. BUS. LAW § 898-b ...............................................................7, 8, 22

N.Y. GEN. BUS. LAW § 898-c ..................................................................7, 8

N.Y. GEN. BUS. LAW § 898-d ........................................................................8

N.Y. GEN. BUS. LAW § 898-e ........................................................................8

N.Y. PENAL LAW § 265:00(21–22) ..............................................................23

N.Y. PENAL LAW § 240.45............................................................................5-6

## TABLE OF AUTHORITIES
### (continued)

Page(s)

OTHER AUTHORITIES

2021 Sess. Law News of N.Y. Ch. 237 (S. 7196)...............................................................9

A.B. 6218, N.J. 219th Leg., 2nd Ann. Sess. (N.J. 2021),
    https://www.njleg.state.nj.us/2020/Bills/A9999/6218_I1.PDF ...............................12

Governor Cuomo Signs First-in-the-Nation Gun Violence Disaster Emergency to
    Build a Safer New York, https://youtu.be/-tKj0FZueFM.  .......................................9

Attorney General James' Statement on New Law That Allows NYS to Hold Gun
    Manufacturers Responsible for Gun Violence (July 6, 2021),
    https://ag.ny.gov/press-release/2021/attorney-general-james-statement-new-
    law-allows-nys-hold-gun-manufacturers. ................................................................9

Report of Active Firearms Licenses - License Type by State Statistics,
    BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES (January 11,
    2021), https://www.atf.gov/firearms/docs/undefined/ffltypebystate01-11-
    2021pdf/download ...................................................................................................16

MOU Among New Jersey, New York, Pennsylvania, and Connecticut Concerning
    Reciprocal Sharing of Crime Gun Data, (Oct. 7, 2021),
    https://www.governor.ny.gov/sites/default/files/2021-10/Joint_Crime_Data_
    MOU.pdf....................................................................................................................19

## INTRODUCTION

Plaintiffs move to enjoin New York's Attorney General from enforcing an unconstitutional statute that was enacted with the express goal of allowing New York to defy federal law by regulating firearm and ammunition sales in all 50 states.  The statute purports to impose "nuisance" liability on businesses operating anywhere in the country that make, sell, or advertise firearms or ammunition products that are later misused or illegally possessed by criminals in New York. Liability attaches even if such a business follows every applicable federal and state firearm law and regulation in its home jurisdiction, and even if it is unaware its products are in New York.

This precise form of liability is directly prohibited by a federal statute that was passed for the purpose of preventing New York from doing exactly what it is (once again) trying to do. Twenty years ago, New York sued dozens of companies that manufacture and sell handguns, asserting the same theory of "public nuisance" liability the new statute codifies.  The suit was dismissed, but the idea proved popular.  Scores of similar suits were filed around the country— some by municipalities (like New York City), some by individuals—all seeking to make firearm and ammunition manufacturers and sellers liable for harm caused by criminal acts of others.  In 2005, Congress concluded such lawsuits are "an abuse of the legal system," and it passed a law prohibiting states from imposing liability on businesses that make or sell firearm and ammunition products "for the harm solely caused by the criminal or unlawful misuse" of those products.

New York is now attempting to accomplish through legislation what it was unable to achieve through litigation: to circumvent federal law and hold manufacturers and distributors of firearm and ammunition products liable for injuries caused by the unlawful use or possession of those products.  Pursuant to the new statute, businesses that make, sell, import, or market firearm or ammunition products—whether or not their conduct was "unlawful in itself," and whether or not they "acted for the purpose of causing harm to the public"—can be sued in New York State if,

by lawfully selling or advertising their products, a jury determines that they "contribute[d] to a condition in New York state that endanger[ed] the safety or health of the public."

This new statute violates the Constitution in three different ways: *First,* because it purports to permit the exact type of lawsuit expressly prohibited by federal law, it is preempted and violates the Supremacy Clause.  *Second*, because it purports to regulate commerce in all 50 states (and exempt products made and sold solely within New York), it violates the Commerce Clause.  And *finally*, because its broad prohibitions (on unspecified "conduct" that somehow "contributes" to dangerous "conditions") are so vague that no reasonable observer could understand what they proscribe, the statute violates due process.  That vagueness is particularly problematic in a statute that implicates the exercise of core constitutional rights: manufacturers' and sellers' First Amendment right to market firearms, and customers' Second Amendment right to purchase them.

The Court should enter a preliminary injunction.  New York's Attorney General has publicly stated that she "look[s] forward to enforcing the [new] law."  Plaintiffs—a national trade organization representing manufacturers, distributors, and dealers of firearm and ammunition products, as well as several of its members (most of whom operate outside of New York)—thus reasonably fear being sued under the law.[2]  They are likely to succeed on the merits of their constitutional challenges.  Absent a preliminary injunction, they will suffer irreparable harm.  And the balance of the equities weighs dramatically in favor of an injunction, which would merely preserve the status quo and prevent enforcement of an unconstitutional law.

---

[2]     *See* Plaintiff Declarations attached as Exhibits A to O.

## FACTUAL BACKGROUND

### A.     Historical "Nuisance" Litigation Against The Firearm Industry

To understand the State's motivation for passing the challenged statute, and the way it interacts with federal law, it is necessary to briefly review some history.  In 2000, New York sued various manufacturers and sellers of handguns, claiming the defendants' "manufacturing, distribution, and marketing practices" had "created, contributed to, and maintained a public nuisance" because a "disproportionate number" of their products were allegedly being used "illegally" in a manner that "endanger[ed] the health and safety" of New Yorkers.  *People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.*, 309 A.D. 2d 91, 92-93 (1st Dep't 2003).  The trial court granted the defendants' motion to dismiss, holding that "defendants are engaged in the lawful manufacture, marketing and sale of a defect-free product in a highly regulated activity far removed from the downstream, unlawful use of handguns that is out of their control and constitutes the nuisance alleged." *Id.* at 93.  The Appellate Division agreed and affirmed.  *Id.* at 95.

New York's wasn't the only lawsuit filed in the late 1990s and early 2000s seeking to impose public-nuisance liability on firearms manufacturers and sellers.  Several dozen similar cases were pending across the country at the time.  Most suffered the same fate as New York's and were dismissed on the pleadings or at the summary judgment stage (*see id.* at 94), but some survived (*id.* at 94 n.1), including a companion case to the *Spitzer* suit filed by New York City.

### B.     The PLCAA

Eventually, the "dispute" over whether the firearm industry could be held civilly liable under state tort laws for injuries caused by third parties "reached the floor of the United States Congress."  *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1131 (9th Cir. 2009).  In 2005, Congress settled that dispute by enacting the bipartisan "Protection of Lawful Commerce in Arms Act" (the "PLCAA").  The PLCAA, 15 U.S.C. §§ 7901-03, is a broad preemptive statute that, among other

things, prohibits the filing of "civil action[s]" against manufacturers and sellers of firearms and

related products for monetary, declaratory, and equitable relief "resulting from the criminal or

unlawful misuse of [such a] product by . . . a third party." *Id.* §7903.  Congress's intent was

detailed in specific findings of fact, including:

- "Lawsuits have been commenced against manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals."

- "The manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by . . . laws [including] the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act."

- "Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing distribution, importation, or sale to the public of firearms or ammunition products . . . are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended."

- "The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States."

15 U.S.C. §§ 7901(a)(3)-(6).  In floor debates leading to the passage of the PLCAA, members of

Congress specifically referred to the New York City suit as a motivation for passing the statute.

*See City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2008) (quoting senator naming

the city's suit "as an 'example[] . . . of exactly the type of . . . lawsuit[] this bill will eliminate.'").

The PLCAA expressly preempts state laws that would permit liability against

manufacturers and sellers of firearms and related products for damage caused by the actions of

third party criminals, but it does contain several exceptions.  For example, certain products liability

suits are exempted from preemption (*see* 15 U.S.C. § 7903(5)(A)(v)), as are suits alleging breach

of contract or warranty (*id.* at § 7903(5)(A)(iv)).  The statute also exempts "action[s] in which a

manufacturer or seller of a qualified product[3] knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought."  *Id.* at § 7903(5)(A)(iii).  This exception has been referred to by courts as the "predicate exception," because it permits lawsuits only upon an allegation that the plaintiff was harmed because the defendant knowingly violated a "predicate" firearm statute.  The PLCAA provides two specific examples of what can be considered "predicate" statutory violations: (1) knowing violations of firearm-sales record-keeping laws (*id.* at § 7903(5)(A)(iii)(I)), and (2) knowingly aiding in an illegal sale to a person the seller knows is not qualified to possess or receive a firearm (*id.* at § 7903(5)(A)(iii)(III)).

**C.**     *City of New York v. Beretta*

As mentioned, one suit Congress intended to preempt with the PLCAA was a nuisance suit brought by the City of New York against several dozen firearm manufacturers and distributors. The City alleged that the defendants had violated New York's criminal nuisance statute by "market[ing] guns to legitimate buyers with the knowledge that those guns will be diverted through various mechanisms into illegal markets."  *City of New York*, 524 F.3d at 389.  Immediately after the PLCAA became effective, the defendants moved for judgment on the pleadings.

The City opposed, arguing the PLCAA was unconstitutional, and (more relevant here) that its lawsuit was permitted because it fell within the predicate exception to the general immunity provided by the PLCAA.  Specifically, the City argued that its suit was predicated on the defendants' alleged violation of New York's criminal nuisance statute, which provides as follows:

> A person is guilty of criminal nuisance in the second degree when
> . . . [b]y conduct either unlawful in itself or unreasonable under all

---

[3]      "Qualified product" is defined as "a firearm . . . or ammunition . . . or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).

> the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons.

N.Y. PENAL LAW § 240.45.  The City claimed that because this statute was "applicable to the sale of [firearms]," it fit within the PLCAA's predicate exception.  Although the District Court agreed with the City's argument, the Second Circuit did not.  It held the City's claims were barred by the PLCAA, and that the predicate exception did not exempt actions alleging violations of New York's criminal nuisance statute, reasoning as follows:

*First*, because the predicate exception contains a general phrase (referring to statutes "applicable to the sale or marketing of [firearms]") followed by specific examples (statutes regulating recordkeeping and prohibiting illegal purchases), the general phrase "is to be construed to embrace only objects similar to those enumerated" later.  *City of New York*, 524 F.3d at 402.  Thus, "construing the term 'applicable to' to mean statutes that clearly can be said to regulate the firearms industry more accurately reflects the intent of Congress."  *Id.*  New York's nuisance statute, "a statute of general applicability" (*id.* at 400), does not "regulate" the firearm industry and is thus not the kind of statute Congress intended to include within the predicate exception.

*Second*, because "Congress clearly intended to protect from vicarious liability members of the firearms industry who engage in the 'lawful design, manufacture, marketing, distribution, importation, or sale' of firearms" (*id.* at 402), and because Congress had specifically referred in its findings of fact to three federal statutes that "regulate" the industry (the Gun Control Act, the National Firearms Act, and the Arms Export Control Act), it must have intended to protect entities who complied with firearms-specific laws, and to exempt only those suits alleging *violation* of such laws.  Reading the predicate exception to include New York's generic nuisance statute, the court held, would lead "to a far too-broad reading of the predicate exception.  Such a result would allow the predicate exception to swallow the statute, which was intended to shield the firearms

-6-

industry from vicarious liability for harm caused by firearms that were lawfully" made and sold. *Id.* at 403.

*Third*, the Court noted that the legislative history of the PLCAA made clear that the sponsors of the bill specifically intended it to apply broadly and to provide immunity from suits (including New York City's) alleging violations of general nuisance statutes.

Based on these holdings, the Second Circuit ordered the case dismissed. *Id.* at 404.

### D.     New York's New Statute

The statute challenged in this suit is New York's response to the PLCAA and the Second Circuit's opinion in *City of New York*. This past July, Governor Cuomo signed N.Y. GEN. BUS. LAW §§ 898-a–e, which purports to empower the State, political subdivisions, and other individual entities (like private citizens, corporations, and associations) to bring the precise type of "public nuisance" lawsuit initially pursued 20 years ago by the State and City in the *Spitzer* and *City of New York* cases—only this time, under color of a statute that refers specifically to the firearm industry in an attempt to bring the suit within the PLCAA's predicate exception.

Specifically, the statute lists two "Prohibited Activities" (N.Y. GEN. BUS. LAW §§ 898-b(1), (2)) each of which it declares to be "public nuisances" (*id.* at § 898-c(1)). The first reproduces the criminal nuisance statute at issue in *City of New York* but adds two clauses that refer to the firearm industry and one that refers to conduct that "contributes" to a dangerous condition:

> **No gun industry member**, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain **or contribute to** a condition in New York state that endangers the safety or health of the public **through the sale, manufacturing, importing or marketing of a qualified product**.

*Id.* § 898-b(1) (bolded type showing alterations from the criminal statute).

The statute's second half declares:

> All gun industry members who manufacture, market, import or offer for wholesale or retail sale any qualified product in New York state shall establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state.

*Id.* § 898-b(2).  "Reasonable controls and procedures" include, without limitation:

> (a) instituting screening, security, inventory and other business practices to prevent thefts of qualified products as well as sales of qualified products to straw purchasers, traffickers, persons prohibited from possessing firearms under state and federal law, or persons at risk of injuring themselves or others; and (b) preventing deceptive acts and practices and false advertising and otherwise ensuring compliance with all provisions of . . . New York's Consumer Protection From Deceptive Acts and Practices law.

*Id.* § 898-a(2).  The statute adopts the PLCAA's definition of a "qualified product" (*see* N.Y. GEN. BUS. LAW § 898-a(6)), which includes only firearms and ammunition products, or component parts, "shipped or transported in interstate or foreign commerce" (15 U.S.C. § 7903(4)), which means that it excludes products that are made and sold entirely within New York.

Violation of either provision resulting in "harm to the public" is deemed by the statute to be "a public nuisance" (N.Y. GEN. BUS. LAW § 898-c(1)), subjecting defendants to civil liability regardless of whether or not they "acted for the purpose of causing harm to the public."  *Id.* § 898-c(2).  The Attorney General, city corporation counsel on behalf of any New York locality, or any "damaged" "person, firm, corporation or association" may bring a claim.  *Id.* § 898-d–e.

The legislative and executive branches of New York's state government have each been clear about the State's intent in passing this statute: it was specifically designed to try to circumvent the PLCAA in order to impose liability on manufacturers and sellers of firearms and ammunition whose products—sold legally outside of New York—are used by third parties to commit crimes in this State.  The act's preamble, for example, states that "despite stringent state and local laws against the illegal possession of firearms, . . . 74% of firearms used in crimes in New York are

purchased outside of New York," and that liability against manufacturers and sellers of firearms is necessary "given the ease at which legal firearms flow into the illegal market."  NY LEGIS 237 (2021), 2021 Sess. Law News of N.Y. Ch. 237 (S. 7196).  Likewise, the Governor and Attorney General were each explicit about their intent to sign and enforce the law in order to evade the strictures of the PLCAA.  Governor Cuomo stated that he signed the bill to "reinstate[] the public nuisance liability for gun manufacturers" and "right the wrong done 16 years ago" when the PLCAA was enacted,[4] and Attorney General James's office wrote that the new law "restore[s] the ability of states and localities to bring civil liability actions against firearm manufacturers and sellers for negligence"— making clear that the A.G. "look[s] forward to enforcing the [new] law."[5]

## LEGAL STANDARD

To obtain a preliminary injunction, Plaintiffs must show: (1) a likelihood of success on the merits, (2) irreparable harm, (3) that the balance of equities tips in Plaintiffs' favor, and (4) that a preliminary injunction is in the public interest.  *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).  All four factors are met here.

## ARGUMENT

### I.    Plaintiffs Are Likely To Succeed On The Merits.

To establish a likelihood of success on the merits, Plaintiffs "need not show that success is certain, only that the probability of prevailing is 'better than fifty percent.'"  *BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000).  At the preliminary-injunction stage, Plaintiffs need only show a likelihood of success on one of their claims.  As explained below,

---

[4]      Governor Cuomo Signs First-in-the-Nation Gun Violence Disaster Emergency to Build a Safer New York, at 35:00–38:15, *available at* https://youtu.be/-tKj0FZueFM.

[5]      Attorney General James' Statement on New Law That Allows NYS to Hold Gun Manufacturers Responsible for Gun Violence (July 6, 2021), *available at* https://ag.ny.gov/press-release/2021/attorney-general-james-statement-new-law-allows-nys-hold-gun-manufacturers.

however, New York's new law violates the Constitution in *three* independent ways:  it violates the Supremacy Clause, the Dormant Commerce Clause, and the Fourteenth Amendment's Due Process Clause.  Plaintiffs are thus likely to succeed on the merits.

### A.    The Statute Violates The Supremacy Clause.

It is hard to imagine a state statute more clearly preempted by federal law than this one.  The statute purports to resurrect the *exact* form of liability the Second Circuit held in *City of New York* was preempted by the PLCAA—going so far as to use the precise language of the nuisance statute the Court held was not exempted from preemption.  Because Congress clearly intended to prohibit states from imposing the type of liability this statute purports to permit, it is preempted.

### 1.    The PLCAA Expressly Preempts New York's New Statute.

The PLCAA contains a clear and broad preemption provision: "A qualified civil liability action may not be brought in any Federal or State court."  15 U.S.C. § 7902(a).  "Qualified civil liability action" is defined as "a civil action . . . brought . . . against a manufacturer or seller of a qualified product . . . for [relief] resulting from the criminal or unlawful misuse of a qualified product by . . . a third party."  *Id.* § 7903(5)(A).  New York's new statute, which borrows the definition of "qualified product" from the PLCAA, specifically purports to allow civil actions to be brought against firearm and ammunition manufacturers and sellers based on harms caused by third parties.  Such liability is not permitted by the PLCAA.

When determining the scope of an express preemption clause, "the purpose of Congress is the ultimate touchstone."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  The court "focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent."  *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011).  "Also relevant . . . is the structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended

the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Medtronic*, 518 U.S. at 486.

Congress's intent in passing the PLCAA was clear: to "prohibit causes of action against" people who make and sell firearm and ammunition products "for the harm solely caused by the criminal or unlawful misuse of [those] products by others."  15 U.S.C. § 7901(b)(1).  The Second Circuit has already held that "nuisance" lawsuits—including suits based on violation of a state's nuisance statute—are exactly the kind of action prohibited, and not exempted, by the PLCAA. *City of New York*, 524 F.3d at 390, 393.  Other courts have held similarly.[6]

Defendant's inevitable argument will be that *this* nuisance statute, unlike the one at issue in *City of New York*, is "applicable to the sale or marketing of" firearms—and thus that actions alleging violations of the new law fall within the PLCAA's predicate exception.  But clever drafting by a recalcitrant state legislature cannot evade Congress's clear mandate.  The statute at issue in *City of New York* said that no "person" was permitted to create a public nuisance.  The new statute says that "no gun industry member" may do so by marketing or selling firearm or ammunition products.  The proscribed *conduct*—creating a "nuisance" by maintaining a dangerous "condition"—is precisely the same, expressed in literally the same words.  Thus, lawsuits under this statute are preempted for exactly the same reasons as suits under the general statute.

---

[6]      *See e.g.*, *Ileto*, 565 F.3d at 1135 (affirming dismissal of "classic negligence and nuisance" claims because "Congress clearly intended to preempt . . . general tort theories of liability"); *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1191 (D. Nev. 2018) (dismissing negligence and public nuisance claims as barred by the PLCAA); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1221-24 (D. Colo. 2015) (negligence and nuisance claims are prohibited by the PLCAA); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 321 (Mo. 2016) ("[T]the PLCAA preempts common law state tort actions, like Appellant's negligence claim, that do not fall within a statutory exception."); *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013) ("reading a general negligence exception into the [PLCAA] would make the negligence per se and negligent entrustment exceptions a surplusage"); *Jefferies v. District of Columbia*, 916 F.Supp.2d 42, 47 (D.D.C. 2013) (the PLCAA "unequivocally" bars ordinary negligence claims).

As the Second Circuit explained in *City of New York*, the predicate exception—which should be "construed narrowly in order to preserve the primary operation of the general rule" (524 F.3d at 403)—applies only to statutes like those listed in the PLCAA, which "clearly can be said to regulate the firearms industry" (*id.* at 402). New York's statute, which simply re-codifies the pre-existing general criminal nuisance statute to prohibit "gun industry members" from violating it, provides no more "regulation" of the industry than the general tort law, which New York courts have repeatedly held does not permit lawsuits against manufacturers of firearm and ammunition products based on a "dangerous condition" created by misuse. *See Spitzer*, 309 A.D.2d at 93; *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 233 (2001) (dismissing negligent marketing claim against firearms manufacturers as not permitted by common law). *See also Ileto*, 565 F.3d at 1136 (when drafting the predicate exception, "Congress had in mind … statutes that … regulate the firearms industry—rather than general tort theories that happened to have been codified by a given jurisdiction."). More generally, interpreting the predicate exception to encompass suits brought under a statute passed as a naked attempt to evade preemption would eviscerate the PLCAA's protections. Congress could not possibly have intended, through this "narrow" exception, to permit the specific form of liability it otherwise abolished. If it did, "the predicate exception [would] swallow the statute." *City of New York*, 524 F.3d at 403.[7]

### 2.    The PLCAA Impliedly Preempts The Statute.

Even if the PLCAA did not expressly preempt the new law, it certainly does so impliedly, because if enforced, the law would stand as an insurmountable obstacle to the accomplishment of

---

[7]    And make no mistake: it would. The statute is expressly designed to create liability for defendants in all 50 states. *And*, it is a model for other states' legislatures. Just last week, a nearly identical bill was introduced in the New Jersey Assembly. *See* A.B. 6218, N.J. 219th Leg., 2nd Ann. Sess. (N.J. 2021), https://www.njleg.state.nj.us/2020/Bills/A9999/6218_I1.PDF.

clear Congressional objectives. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000) (even where a preemption clause in a federal statute does not expressly displace state common law claims, it can nonetheless impliedly preempt such claims based on conflict preemption principles); *SPGGC, L.L.C. v. Blumenthal*, 505 F.3d 183, 188 (2d Cir. 2007) (same).  Implied preemption requires a two-step analysis: (1) ascertaining the federal purpose and objectives, and (2) determining whether the state law presents an obstacle to accomplishing them.  *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 101 (2d Cir. 2013).

The purpose of the PLCAA, as discussed at length above, was to prohibit "imposing liability on an entire industry" (15 U.S.C. § 7901(a)(6)) by preventing these precise lawsuits— literally, the very suits filed by the City and State of New York on identical theories of nuisance liability—because "such lawsuits . . . impose unreasonable burdens on interstate and foreign commerce."  15 U.S.C. § 7901(b)(4).  *See, e.g.*, *Adames v. Sheahan*, 880 N.E.2d 559, 586 (Ill. App. 2007) (noting that "Congress was primarily concerned with novel nuisance cases" when it enacted the PLCAA), *rev'd on other grounds*, 909 N.E.2d 742 (Ill. 2009).  There should be no question that New York's new law would pose an "obstacle" to the purpose and objectives of the PLCAA; indeed, frustrating the federal scheme was the State's *express goal* in passing this legislation. *See infra* at 9 (quoting the Legislature, Governor, and Attorney General describing the law as "reinstat[ing]" and "restor[ing]" the ability to bring negligence and nuisance suits prohibited by the PLCAA, and to fight "federal overreach").

### B.     The Statute Violates The Dormant Commerce Clause.

Even if Congress had not preempted the liability permitted by this statute, New York's attempt to regulate the nationwide firearm industry would still violate the Constitution because it discriminates against, attempts to control, and imposes severe burdens on interstate commerce.

The Commerce Clause (U.S. Const. Art. I § 8) grants Congress the power "[t]o regulate commerce with foreign Nations, among the several States, and with the Indian Tribes."  The Supreme Court has repeatedly held that that grant of Congressional authority includes a "dormant" restriction on the individual states' ability to regulate interstate commerce in a discriminatory or burdensome manner.   Specifically, the Dormant Commerce Clause "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330 (1996).  A state statute violates the Dormant Commerce Clause if it (1) "clearly discriminates against interstate commerce in favor of intrastate commerce," (2) "has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question," or (3) "imposes a burden on interstate commerce incommensurate with the local benefits secured." *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009).  New York's statute does all three.

### 1.    The Statute Is Facially Discriminatory.

To begin, the law unconstitutionally favors *intra*state commerce at the expense of *inter*state commerce.  Laws that do that are "per se invalid, save in a narrow class of cases in which the [state] can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *C&A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 392 (1994).

The law discriminates against interstate commerce because it expressly does not apply to defendants who make and sell firearm and ammunition products solely within the State of New York.  The statute applies only to "qualified products," a term it defines by borrowing from the PLCAA, which in turn, limits the definition to "a firearm . . . or ammunition . . . or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce."  15 U.S.C. § 7903(4).  The law accordingly applies *only* to products that that originated, at least in part, in other states.  The Second Circuit said as much in the *City of New*

-14-

*York* case, holding the PLCAA was a valid exercise of Congress's Commerce Clause power because, through its definition of "qualified products," it "only reaches suits that have an explicit connection with or effect on interstate commerce" and raises "no concern[] about Congressional intrusion into 'truly local' matters." 524 F.3d at 394-95.

Because this statute is limited to governing interstate transactions, firearm and ammunition products that have moved only *intrastate* (*i.e.,* products manufactured in New York from locally made components and sold here) are exempt. The act accordingly facially discriminates against out-of-state commerce in favor of in-state commerce and is *per se* invalid. *See Chem. Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 342 (1992) (holding a state may not burden a transaction more heavily "when it crosses state lines than when it occurs entirely within the State."); *City of Philadelphia v. New Jersey*, 437 U.S. 617, 626–27 (1978) ("[W]hatever New Jersey's ultimate purpose, it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently.").

## 2. The "Practical Effect" of the Statute Is To Control Commerce Outside New York's Borders.

Even if the State were to amend the law to encompass in-state transactions, it would still be unconstitutional. The Dormant Commerce Clause also prohibits legislation that has the "practical effect" of controlling commerce outside a State's borders, "whether or not the commerce has effects within the State." *Healy v. The Beer Institute*, 491 U.S. 324, 336 (1989); *see also W. Lynn Creamery v. Healy*, 512 U.S. 186, 194–95 (1994). Three factors are relevant: (1) whether the regulation is applied to commerce "wholly outside of the State's borders," (2) whether "the practical effect" of the regulation is to control such commerce, and (3) what effect the regulation has on other states' regulations, as well as what effect would result "if not one, but many or every, State adopted similar legislation." *Healy*, 491 U.S. at 336.

-15-

The first factor is satisfied for the same reasons outlined above: because the law applies exclusively to products that have moved interstate and exempts locally-produced products, it regulates commerce "wholly outside" New York. The second factor ("practical effect") is also satisfied. On that point, the Second Circuit's decision in *American Booksellers Foundation v. Dean*, 342 F.3d 96 (2d Cir. 2003), is particularly instructive. There, website operators sued Vermont's Governor challenging a statute prohibiting the transfer of material "harmful to minors" over the internet. *Id*. at 99. The Second Circuit struck down the law because its "practical effect" was to force out-of-state internet operators to comply:

> A person outside Vermont who posts information on a website or on an electronic discussion group cannot prevent people in Vermont from accessing the material. If someone in Connecticut posts material for the intended benefit of other people in Connecticut, that person must assume that someone from Vermont may also view the material. This means that those outside Vermont must comply with [the statute] or risk prosecution by Vermont. Vermont has "project[ed]" [the statute] onto the rest of the nation.

*Id*. at 103. The Dormant Commerce Clause "protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Id*.

Here, the act's *stated purpose* is to project New York's regulatory regime around the country. Indeed, if the law is permitted to be enforced, every maker or seller of a firearm or ammunition product, in any state, would be subject to its proscriptions and at risk of crippling liability if sued. And nearly all of them conduct business primarily or entirely outside New York. As of January 2021, there were a total of 131,952 federal firearms licensees (or "FFL"s) in the United States. Of that total, only 2.9% (or 3,827) operate in New York.[8] The remaining 97.1%

---

[8]     *See Report of Active Firearms Licenses - License Type by State Statistics*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES (January 11, 2021), *available at* https://www.atf.gov/firearms/docs/undefined/ffltypebystate01-11-2021pdf/download.

operate elsewhere.  If permitted to stand, this law will control the conduct of over 100,000 FFLs, *except* those dealing solely in products made and sold within New York.  That is a textbook Commerce Clause violation; New York cannot regulate legal firearm sales in the other 49 states.[9] The "practical effect" of the act is therefore to "project" New York law onto entities operating in other states, resulting in "inconsistent legislation" between New York's law and the law of those other states.  *American Booksellers*, 342 F.3d at 103; *see also Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 584 (1986).

As for the third factor (effect on other states' laws): This statute is the first of its kind.  If other states implement similar laws (and it seems likely they will, as the proposed New Jersey legislation makes clear), industry members will be forced to comply with the law of the most stringent state or face liability.  If inconsistent laws are enacted, compliance would be impossible. "Avoiding this sort of 'economic Balkanization,' . . . and the retaliatory acts of other States that may follow, is one of the central purposes of [Dormant] Commerce Clause jurisprudence." *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 577 (1997).

### 3. The Statute Fails The *Pike* Balancing Test.

Finally: even if the law were facially nondiscriminatory, it would still violate the Dormant Commerce Clause because its burdens on interstate commerce exceed any potential public benefits.  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  The law's benefits are not presumed; a "meaningful examination" is required.  *Town of Southold v. Town of E. Hampton*, 477

---

[9]    And it is especially problematic because out-of-state merchants could not guarantee compliance even if they wanted to.  Manufacturers and sellers cannot control the actions of third parties, and any criminal could obtain a lawful firearm and illegally use or possess it in New York. The only way for industry actors like Plaintiffs to guarantee that they won't get sued in New York is to cease operations entirely.  *See* Ex. A, ¶¶ 24-25; Ex. B, ¶¶ 23-24; Ex. D, ¶¶ 23-24; Ex. E, ¶¶ 23-24; Ex. F, ¶¶ 24-25; Ex. G, ¶¶ 23-24; Ex. H, ¶¶ 21-22; Ex. I, ¶¶ 21-22; Ex. J, ¶¶ 24-25; Ex. K, ¶¶ 24-25; Ex. L, ¶¶ 17-18; Ex. M, ¶¶ 24-25; Ex. N, ¶¶ 24-25; Ex. O, ¶¶ 24-25.

F.3d 38, 52 (2d Cir. 2007).  The fact that the law seeks to address public safety does not diminish Defendant's burden to demonstrate it will actually do so in a real way.  *Kassel v. Consol. Freightways Corp. of Delaware*, 450 U.S. 662, 670 (1981) ("[T]he incantation of a purpose to promote the public health or safety does not insulate a state law from Commerce Clause attack.").

Congress already recognized that nuisance actions like those permitted by this statute "impose *unreasonable* burdens on interstate and foreign commerce."  15 U.S.C. § 7901(b)(4) (emphasis added).  There is, in fact, no way for firearm industry members to insulate themselves from liability absent a complete cessation of lawful operations.[10]  Theoretically, a company could stop manufacturing firearm and ammunition products in New York, or stop offering them for wholesale or retail sale here[11]—which would result in significant lost, lawful revenue and unfairly burden commerce outside New York's borders.  But even that would not actually preclude liability, which attaches for any lawful action New York later determines to be "unreasonable under all the circumstances," a broad and undefined standard.  As the court recognized in *Spitzer*, "[a]ll a creative mind would need to do is construct a scenario describing a known or perceived harm of a sort that can somehow be said to relate back to the way a [firearm industry member] makes, markets and/or sells its nondefective, lawful product or service" to state a claim.  309 A.D.2d at 96.  The plaintiffs have two choices—cease all business operations or continually be at risk of facing potentially business-ending litigation in New York.[12]

---

[10]    *See* Ex. A, ¶¶ 24-25; Ex. B, ¶¶ 23-24; Ex. D, ¶¶ 23-24; Ex. E, ¶¶ 23-24; Ex. F, ¶¶ 24-25; Ex. G, ¶¶ 23-24; Ex. H, ¶¶ 21-22; Ex. I, ¶¶ 21-22; Ex. J, ¶¶ 24-25; Ex. K, ¶¶ 24-25; Ex. L, ¶¶ 17-18; Ex. M, ¶¶ 24-25; Ex. N, ¶¶ 24-25; Ex. O, ¶¶ 24-25.

[11]    *See* Ex. A, ¶ 24; Ex. B, ¶ 23; Ex. D, ¶ 23; Ex. E, ¶ 23; Ex. F, ¶ 24; Ex. G, ¶ 23; Ex. H, ¶ 21; Ex. I, ¶ 21; Ex. J, ¶ 24; Ex. K, ¶ 24; Ex. L, ¶ 17; Ex. M, ¶ 24; Ex. N, ¶ 24; Ex. O, ¶ 24.

[12]    *See* Ex. A, ¶¶ 24-25; Ex. B, ¶¶ 23-24; Ex. D, ¶¶ 23-24; Ex. E, ¶¶ 23-24; Ex. F, ¶¶ 24-25; Ex. G, ¶¶ 23-24; Ex. H, ¶¶ 21-22; Ex. I, ¶¶ 21-22; Ex. J, ¶¶ 24-25; Ex. K, ¶¶ 24-25; Ex. L, ¶¶ 17-18; Ex. M, ¶¶ 24-25; Ex. N, ¶¶ 24-25; Ex. O, ¶¶ 24-25.

Those burdens are unconstitutional, and Defendant will be unable to prove any public benefit outweighs them.  The act's stated purpose is to reduce gun violence.  But New York courts have already recognized that the relationship between the lawful sale and manufacture of firearm products and criminal behavior is attenuated.  *See Spitzer*, 309 A.D.2d at 96; *see also Hamilton*, 96 N.Y.2d at 234 ("[T]he connection between defendants, criminal wrongdoers, and plaintiffs is remote, running through several links in a chain and most often including numerous subsequent legal purchasers or even a thief.").  *See also Rhode v. Becerra*, 445 F. Supp. 3d 902, 952 (S.D. Cal. 2020) (enjoining California law requiring out-of-state ammunition sellers to have a California-based dealer, because without evidence the regulation would actually curb crime, the "isolationist burdens on interstate commerce . . . far outweigh whatever benefit it is designed to achieve").

Here, while the stated purpose of the new law is to curb the illegal flow of firearms into New York, the State has no evidence that imposing liability on the firearm industry for lawful conduct will curb the behavior of criminals.  And New York has other, less burdensome means to address criminal behavior.  Governor Hochul, for example, has signed a Memorandum of Understanding with the governors of neighboring states to "share crime gun data in an effort to prevent gun violence and enhance public safety."[13]  Data may be shared across state lines "to detect, deter, and investigate gun crimes, as well as identify and apprehend straw purchasers, suspect dealers, firearms traffickers, and other criminals"—actions that have no impact on interstate commerce.  The same cannot be said of this law.  Because the act's purported benefits do not justify the severe burden it places on interstate commerce, it violates the Constitution.

---

[13]     MOU Among New Jersey, New York, Pennsylvania, and Connecticut Concerning Reciprocal Sharing of Crime Gun Data, (Oct. 7, 2021), *available at* https://www.governor.ny.gov/ sites/default/files/2021-10/Joint_Crime_Data_MOU.pdf.

C.      **The Statute Violates The Due Process Clause.**

Even if the Constitution permitted New York to regulate the national firearm industry by permitting these types of lawsuits, the particular statute the State has chosen to enact—which prohibits "lawful" conduct that "contributes" to a dangerous "condition" in the State, and that requires businesses to employ ill-defined "controls or procedures"—is so vague that it is impossible to know what conduct it covers.  As a result, the statute violates the Due Process Clause.

1.      **The Law Is Subject To A Strict Test For Vagueness.**

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  A statute can be impermissibly vague for either of two independent reasons: (1) if "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) if "it authorizes or even encourages arbitrary and discriminatory enforcement." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010).  Importantly, "[t]he degree of vagueness tolerated in a statute varies with its type: economic regulations are subject to a relaxed vagueness test, laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all." *Id.*  As the Supreme Court has explained, "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights.  If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).  *See also Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006) ("When a statute is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.").  A heightened standard also applies to laws that allow "quasi-criminal" penalties.  *See Blackwelder v. Safnauer*, 689 F. Supp. 106, 125 (N.D.N.Y. 1988) ("[G]reater

-20-

precision is required when possible criminal or quasi-criminal penalties are contemplated, because in such cases the consequences of imprecision are qualitatively more severe"). This heightened standard is a "relatively strict test" that requires the statute "provide explicit standards for those who apply" it. *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 396 (2d Cir. 2004).

New York's new nuisance statute is precisely the kind of law that requires the most precision to satisfy due process—both because it threatens to impose "quasi-criminal" penalties,[14] and because it seeks to regulate—and may inhibit—the exercise of core constitutional rights. The act targets "marketing" of firearms—commercial speech protected by the First Amendment (*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980))— contrary to one of the purposes of the PLCAA ("[t]o protect the right under the First Amendment . . . of manufacturers, distributors, dealers, and importers of firearms. . . to speak freely"). And, by threatening the *industry* with unpredictable and potentially crippling liability, it threatens to undermine the market for arms—which would inhibit the exercise of Second Amendment rights. Indeed, Congress expressly concluded as much in the PLCAA, noting that the Second Amendment "protects the rights of individuals . . . to keep and bear arms," and that "[t]he possibility of imposing liability on an entire industry for harm that is solely caused by others . . . threatens the diminution of [this] basic constitutional right and civil liberty." 15 U.S.C. §§ 7901(a)(2), (6).

### 2. The Law Fails The Test.

This statute comes nowhere close to satisfying the strict vagueness test. No reasonable person could understand what conduct it proscribes, and no explicit standards guide its application.

---

[14]   New York law allows for the imposition of punitive damages for common-law public nuisance claims. *See City of New York v. Taliaferrow*, 158 A.D.2d 445, 446 (2d Dep't 1990). The new statute provides for "damages," without limitation; there is at least a possibility that a New York court interpreting the statute would conclude that punitive damages are available. And punitive damages are "quasi-criminal." *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19 (1991).

The law purports to forbid makers and sellers of firearm and ammunition products from "creat[ing], maintain[ing], or contribut[ing] to a condition in New York state that endangers the safety or health of the public[.]"  N.Y. GEN. BUS. LAW § 898-b.  But the act offers no definition of a covered "condition" or what is meant by one's "contribution," leaving lawful businesses without any indication of what conduct and causal connection is required.  The word "condition" is "broad enough to include *any* state or situation." *Am. Sugar-Ref. Co. v. United States*, 99 F. 716, 719 (2d Cir. 1900).  Attaching liability for the alleged creation of "any state or situation" is far from an "explicit standard" that would provide persons of ordinary intelligence an understanding of what the Act prohibits.  *Advance Pharm., Inc.*, 391 F.3d at 396.

Moreover, unlike the criminal nuisance statute in *City of New York*, the new act prohibits "*contributing*" to a dangerous "condition." The statute does not define "contribute," and other courts recognize the term is overly vague "in that almost an innumerable amount of factors can play a role in an outcome." *Goetz v. Greater Georgia Life Ins. Co.*, 649 F. Supp. 2d 802, 824–25 (E.D. Tenn. 2009).  Combine these problems with the act's failure to define precisely what "reasonable controls and procedures" must be implemented[15] and what conduct will be considered "unreasonable under all the circumstances," and industry members have no ability to even attempt to comply.[16]  This is especially true because firearm laws differ dramatically around the country.

---

[15]     Indeed, the statute's definition of that term is so broad as to be meaningless:  "[P]olicies that **include but are not limited to:** (a) instituting screening, security, inventory **and other business practices** to prevent thefts of qualified products as well as sales of qualified products to straw purchasers, traffickers, persons prohibited from possessing firearms under state or federal law, or **persons at risk of injuring themselves or others** . . . ."  N.Y. GEN. BUS. LAW § 898-a(2) (bolded text indicating phrases that expressly broaden the definition without specification).

[16]     *See* Ex. A, ¶¶ 20-23; Ex. B, ¶¶ 19-22; Ex. D, ¶¶ 19-22; Ex. E, ¶¶ 19-22; Ex. F, ¶¶ 20-23; Ex. G, ¶¶ 19-22; Ex. H, ¶¶ 19-20; Ex. I, ¶¶ 17-20; Ex. J, ¶¶ 20-23; Ex. K, ¶¶ 20-23; Ex. L, ¶¶ 12-16; Ex. M, ¶¶ 20-23; Ex. N, ¶¶ 20-23; Ex. O, ¶¶ 20-23.

New York, for example, criminalizes the manufacture and sale of certain "semiautomatic" firearms. N.Y. PENAL LAW § 265:00(21–22); 265.10(1–2). But such products are legal in other states.[17] If a manufacturer makes and sells such a product in Texas, in full compliance with all applicable federal and Texas laws, has it nonetheless "contributed" to a dangerous "condition" in New York if the firearm is later stolen and used in a crime here? Or consider Missouri, where it is a criminal offense for an FFL to refuse to transfer a firearm to a bona-fide customer simply because a firearm previously sold to that customer has been traced by law enforcement. MO. REV. STAT. § 571.014(a). If a dealer sells a firearm to a customer in Missouri who was associated with a traced weapon, and that firearm is used in a New York crime, has the Missouri dealer acted "unreasonably under all the circumstances"? The statute provides no guidance and therefore gives covered parties no ability to govern their behavior in a way that avoids potential liability.

That the law is modeled in part on the criminal nuisance statute does not save it. Public nuisance claims have traditionally been constrained to certain contexts and by years of common law. *See, e.g.*, *Hamilton*, 750 N.E.2d at 1067–68 (rejecting contention that gun manufacturers have a general duty to lessen the risk of illegal gun trafficking because they have the power to restrict marketing and product distribution); *Spitzer*, 309 A.D.2d at 96 (ruling "giving a green light to a common-law public nuisance cause of action will, in our judgment, likely open the courthouse doors to a flood of limitless, similar theories of public nuisance, not only against these defendants, but also against a wide and varied array of other commercial and manufacturing enterprises and activities"). New York's own nuisance law has been shaped by common-law criminal and property-based limitations. This new statute, however, is divorced from those limitations and

---

[17]   *See* Ex. A, ¶¶ 16-19; Ex. B, ¶¶ 15-18; Ex. D, ¶¶ 15-18; Ex. E, ¶¶ 15-18; Ex. F, ¶¶ 16-19; Ex. G, ¶¶ 15-18; Ex. H, ¶¶ 15-18; Ex. J, ¶¶ 16-19; Ex. K, ¶¶ 16-19; Ex. M, ¶¶ 16-19; Ex. N, ¶¶ 16-19; Ex. O, ¶¶ 16-19.

allows nuisance claims based on theories New York courts have previously rejected as too expansive in the very context of potential vicarious liability for firearm manufacturers and sellers. *Spitzer*, 309 A.D.2d at 96.  Without more explicit standards defining the limits of liability, and without any common-law limitations, firearm industry members are left to guess what conduct is prohibited and are forced to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked."  *Grayned*, 408 U.S. at 109.  Given this vagueness, the act "authorizes" and even "encourages" "arbitrary and discriminatory enforcement."  *VIP of Berlin, LLC*, 593 F.3d at 186 (citation omitted).  It thus violates due process.

## II.  Plaintiffs Will Be Irreparably Harmed Absent Preliminary Injunctive Relief.

"[T]he alleged violation of a constitutional right triggers a finding of irreparable harm." *Conn. Dep't of Envtl. Prot. v. Occupational Safety & Health Admin*., 356 F.3d 226, 231 (2d Cir. 2004) (presuming irreparable harm in constitutional sovereign immunity case); *accord Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009) (same presumption in Fourth Amendment case); *Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (same presumption in constitutional right-to-privacy case); *see also Dimartile v. Cuomo*, No. 1:20-CV-0859 (GTS/CFS), 2020 WL 4877239, at *8 (N.D.N.Y. Aug. 19, 2020) (where "the deprivation of a constitutional right is itself the main harm, the likelihood of success on the constitutional claim is inextricably intertwined with whether irreparable harm exists").  Because Plaintiffs are likely to succeed on the merits of their constitutional challenges, they have necessarily shown irreparable harm.  Aside from that, the threat to Plaintiffs' businesses also constitutes irreparable harm.[18]

---

[18]      *See* Ex. A, ¶¶ 24-25; Ex. B, ¶¶ 23-24; Ex. D, ¶¶ 23-24; Ex. E, ¶¶ 23-24; Ex. F, ¶¶ 24-25; Ex. G, ¶¶ 23-24; Ex. H, ¶¶ 21-22; Ex. I, ¶¶ 21-22; Ex. J, ¶¶ 24-25; Ex. K, ¶¶ 24-25; Ex. L, ¶¶ 17-18; Ex. M, ¶¶ 24-25; Ex. N, ¶¶ 24-25; Ex. O, ¶¶ 24-25.

*Petereit v. S.B. Thomas, Inc*., 63 F.3d 1169, 1186 (2d Cir. 1995) ("Major disruption of a business can be as harmful as its termination and thereby constitute irreparable injury.").

### III.    The Balance Of Equities And Public Interest Favor Plaintiffs.

Finally, the balance of equities favors Plaintiffs.  In contrast to the substantial constitutional harms Plaintiffs and their businesses will suffer if the act is enforced, Defendant will suffer no harm from an injunction that maintains the status quo.  *See Perry St. Software, Inc. v. Jedi Techs., Inc.*, No. 20-cv-04539 (CM), 2020 WL 6064158, at *7 (S.D.N.Y. Oct. 14, 2020) ("The balance of equities also tips in [plaintiff's] favor, as entering a preliminary injunction would merely preserve the status quo while we finish litigating an issue on which it appears likely to succeed.").  For the last 16 years, claims now allowed were prohibited by the PLCAA.  Enjoining the law's enforcement will merely restore that status quo.  Also, Defendant can suffer no harm when an injunction stops enforcement of an unconstitutional statute.  *See New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 473 (S.D.N.Y. 2006) (there "can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute").  For similar reasons, preliminary injunctive relief is in the public interest.  The public has a strong interest "in having constitutional rights protected and not unduly infringed by unchecked government action."  *Dimartile*, 2020 WL 4877239, at *11; *Ligon v. City of New York*, 925 F. Supp. 2d 478, 541 (S.D.N.Y. 2013) ("[T]he public interest lies with the enforcement of the Constitution.").  On the other hand, "the Government does not have an interest in the enforcement of an unconstitutional law."  *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013).

**CONCLUSION**

The Court should grant a preliminary injunction.


Dated: December 16, 2021                    Respectfully submitted,

                                            _/s/ Scott A. Chesin_____
                                            SCOTT A. CHESIN
                                            N.D.N.Y. Bar Roll # 702851
                                            **SHOOK, HARDY & BACON LLP**
                                            1325 Avenue of the Americas, 28th Floor
                                            New York, N.Y. 10019
                                            Telephone:   (212) 779-6106
                                            Facsimile:    (929) 501-5545
                                            schesin@shb.com


                                            AMY M. CROUCH (*pro hac vice forthcoming*)
                                            Missouri Bar # 48654
                                            **SHOOK, HARDY & BACON LLP**
                                            2555 Grand Boulevard
                                            Kansas City, Mo. 64108
                                            Telephone: (816) 474-6560
                                            Facsimile: (816) 421-5547
                                            amcrouch@shb.com

                                            ***Counsel for all Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing was electronically filed with this Court's CM/ECF system on December 16, 2021, and accordingly served automatically upon all counsel of record for this matter.

*/s/ Scott A. Chesin*                          

Scott A. Chesin