# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, Inc., et al., <br><br>         Plaintiffs, <br><br>   v. <br><br> KATHY HOCHUL, in her official capacity as Governor of New York, and LETITIA JAMES, in her official capacity as New York Attorney General, <br><br>         Defendants. | 1:21-cv-1348 (MAD/CFH) |

DECLARATION OF KEVIN B. REID, SR. ON BEHALF OF
STURM, RUGER & COMPANY, INC.

I, Kevin B. Reid, Sr., hereby declare as follows:

1. I am over the age of 18 years, and I am qualified to submit this declaration on behalf of Sturm, Ruger & Company, Inc. ("Ruger").

2. I am the Vice President, General Counsel, and Corporate Secretary at Ruger.

3. I have personal knowledge of the facts set forth in this declaration through direct involvement and by personally reviewing Ruger's records and information.

4. Ruger is a Delaware corporation with its principal place of business in Connecticut. Ruger was founded in 1949 and has grown to one of the largest firearms manufacturers in the United States, principally for the consumer market.

5. Ruger is a federal firearms licensee ("FFL") licensed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

1

6. Ruger is a corporation engaged in the manufacture of firearms and so is a "gun industry member" as defined in New York's Act ("the Act") codified at N.Y. Gen. Bus. Law §§ 898-a–e.

7. Ruger is also a "manufacturer" as defined in the Protection of Lawful Commerce in Arms Act ("PLCAA"). 15 U.S.C. § 7903(2).

8. Ruger manufactures firearms for civilian use in New Hampshire, Arizona, and North Carolina. Ruger does not have any manufacturing operations in New York. Ruger utilizes certain vendors in New York that manufacture certain component parts in that state for Ruger. Ruger's marketing department also is located in New York.

9. Ruger utilizes a two-step distribution system in the domestic market. This means that Ruger sells firearms for domestic civilian use to a small number of independent, federally licensed distributors in accordance with all applicable state, federal and local laws. These independent, federally licensed distributors, in turn, sell the firearms throughout the United States to independent, federally licensed retailers in accordance with applicable federal, state, and local laws. These independent, federally licensed retailers then sell the firearms to consumers in accordance with applicable federal, state, and local laws. Thus, a Ruger-branded firearm destined for the domestic, consumer market typically is subject to three, federally regulated transactions before it reaches the hands of a consumer. Ruger does not sell firearms directly to civilians.

10. I understand the Act's preamble states that, "despite stringent state and local laws against the illegal possession of firearms [in New York] according to the Bureau of Alcohol, Tobacco, Firearms and Explosives statistics, 74% of firearms used in crimes in New York are purchased outside of New York." NY LEGIS 237 (2021), 2021 Sess. Law News of N.Y. Ch. 237 (S. 7196).

11. I understand the Act seeks to address "the ease at which legal firearms flow into the illegal market" and the criminal misuse of firearms in New York. *Id.*

12. The firearms industry is heavily regulated. All firearms industry members must comply with multiple federal, state, and local laws and regulations that govern the manufacture, export, import, sale, and acquisition of firearms including: the National Firearms Act, 26 U.S.C. §§ 5801 *et seq.*; the Federal Gun Control Act of 1968, 18 U.S.C. §§ 921 *et seq.*; the Arms Export Control Act, 22 U.S.C. § 2778; Importation of Arms, Ammunition and Implements of War, 27 C.F.R § 447; Commerce in Firearms and Ammunition, 27 C.F.R § 478; as well as numerous state and local laws and regulations.

13. The Act declares "No gun industry member, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain or contribute to a condition in New York state [*i.e.*, a public nuisance] that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a qualified product." N.Y. Gen. Bus. Law § 898-b(1).

14. I understand that "qualified products" are only those that have "been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).

15. The Act also declares that "All gun industry members who manufacture, market, import or offer for wholesale or retail sale any qualified product in New York state shall establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state." N.Y. Gen. Bus. Law § 898-b(2). "Reasonable controls and procedures" are defined as "policies that include, but are not limited to: (a) instituting screening, security, inventory and other business practices to prevent thefts of qualified products as well as sales of qualified products to straw purchasers, traffickers,

persons prohibited from possessing firearms under state and federal law, or persons at risk of injuring themselves or others; and (b) preventing deceptive acts and practices and false advertising and otherwise ensuring compliance with all provisions of article twenty-two-A of this chapter." *Id*. § 898-a(2).

16.New York law criminalizes multiple activities, including the manufacture, transport, shipment, or sale of any "semiautomatic" rifle, pistol, or shotgun with various defined characteristics such as a semiautomatic rifle that has "a pistol grip that protrudes conspicuously beneath the action of the weapon," N.Y. Penal Law § 265:00(21–22); 265.10(1–2).

17.Ruger is permitted to manufacture and sell "semiautomatic" firearms of the type illegal under New York's Penal Law in multiple other states.

18.I fear that, if a criminal illegally transports into New York one of the semiautomatic firearms defined by New York Penal Law to be illegal, Ruger would face liability under the Act even though the initial manufacture, transport, and shipment of the firearm by Ruger was lawful and complied with all applicable laws and regulations in the place undertaken.

19.Ruger cannot eliminate liability under the Act's first prong because the behavior of third-party criminals is outside Ruger's control.

20.I also fear that, even setting aside the above activities that New York criminalizes, Ruger could still face liability under the Act for any activity that New York deems to be "unreasonable under all the circumstances," even though in full compliance with all laws and regulations in the place undertaken.

21.Ruger cannot eliminate liability under Act because "unreasonable under all the circumstances" is not defined, is highly subjective and vague, and because this provision again

4

creates liability for Ruger based on the behavior of third-party criminals who are outside Ruger's control.

22. I also fear that Ruger also could face liability under the Act's vague and subjective requirement to "establish and utilize reasonable controls and procedures to prevent" firearms "from being possessed, used, marketed or sold unlawfully in New York state" even though multiple "controls and procedures" are already required by federal, state, and local laws and regulations.

23. Ruger cannot eliminate liability under the Act because, again, liability is predicated on the behavior of third-party criminals outside Ruger's control.

24. Drastic measures by Ruger could theoretically eliminate liability under the Act (discontinuing the manufacture of semiautomatic firearms entirely, for example), but the economic impact of such measures to Ruger would be irreparable and, regardless, the potential for litigation and liability under the Act would not be eliminated.  Because the Act is vague and broad and encompasses fully lawful conduct, there is no action that Ruger could take in order to insulate it from liability, other than ceasing operations altogether.

25. If the Act is not enjoined, Ruger will be irreparably harmed by being forced to cease lawful, federally licensed operations or face liability, both of which would have a significant, harmful impact on the company's revenue.  In addition, because the Act's standards are vague and unattainable, and liability under the Act attaches based upon the behavior of third-party criminals outside Ruger's control, there is no way for Ruger to comply.  Ruger will continually be at risk of litigation and potential liability unless it ceases doing business as a federally licensed firearms manufacturer.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of December, 2021.

By: _____
Kevin B. Reid, Sr.