# Exhibit I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> KATHY HOCHUL, in her official capacity as Governor of New York, and LETITIA JAMES, in her official capacity as New York Attorney General, <br><br> Defendants. | 1:21-cv-1348 (MAD/CFH) |

### DECLARATION OF CARLOS GUEVARA ON BEHALF OF GLOCK, INC.

I, Carlos Guevara, hereby declare as follows:

1. I am over the age of 18 years, and I am qualified to submit this declaration on behalf of GLOCK, Inc. ("GLOCK").

2. I am a Vice-President and the General Counsel and Secretary at GLOCK.

3. I have personal knowledge of the facts set forth in this declaration through direct involvement and by personally reviewing GLOCK records and information.

4. GLOCK is a manufacturer, importer, and U.S. distributor of GLOCK brand firearms.

5. GLOCK is a federal firearms licensee ("FFL") licensed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

6. GLOCK is a corporation engaged in the manufacture of firearms and so is a "gun industry member" as defined in New York's Act ("the Act") codified at N.Y. Gen. Bus. Law §§ 898-a.–e. *Id.* at § 898-a.4.

7. GLOCK is also a "manufacturer" as defined in the Protection of Lawful Commerce in Arms Act ("PLCAA"). 15 U.S.C. § 7903(2).

8. GLOCK firearms are manufactured in Austria and Georgia. GLOCK does not have any manufacturing operations in New York.

9. GLOCK firearms for sale to the commercial market are generally sold to federally licensed wholesale distributors with whom it has Commercial Distributor Agreements. One of the distributors to which GLOCK sells its firearms for resale to the commercial market is AmChar Wholesale, Inc., which is located in Rochester, New York. GLOCK does not sell firearms directly to civilians in New York.

10. The Act's preamble states that, "despite stringent state and local laws against the illegal possession of firearms [in New York] according to the Bureau of Alcohol, Tobacco, Firearms and Explosives statistics, 74% of firearms used in crimes in New York are purchased outside of New York." NY LEGIS 237 (2021), 2021 Sess. Law News of N.Y. Ch. 237 (S. 7196).

11. The Act seeks to address the alleged "ease at which legal firearms flow into the illegal market" and the criminal misuse of firearms in New York. NY LEGIS 237 (2021), 2021 Sess. Law News of N.Y. Ch. 237 (S. 7196).

12. The firearms industry is heavily regulated. All firearms industry members must comply with multiple federal, state, and local laws and regulations that govern the manufacture, export, sale and acquisition of firearms including: the National Firearms Act, 26 U.S.C. §§ 5801 *et seq.*; the Gun Control Act, 18 U.S.C. §§ 921 *et seq.*; the Arms Export Control Act, 22 U.S.C. § 2778; Importation of Arms, Ammunition and Implements of War, 27 C.F.R § 447; Commerce in Firearms and Ammunition, 27 C.F.R § 478; Machineguns, Destructive Devices, and Certain Other Firearms, 27 C.F.R. § 479; as well as numerous state and local laws and regulations.

13. The Act declares "No gun industry member, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain or contribute to a condition in New York state [*i.e.*, a public nuisance] that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a qualified product." N.Y. Gen. Bus. Law § 898-b.1.

14. "Qualified products" are only those that have "been shipped or transported in interstate or foreign commerce." N.Y. Gen. Bus. Law § 898-a.6.; 15 U.S.C. § 7903(4).

15. The Act also declares that "All gun industry members who manufacture, market, import or offer for wholesale or retail sale any qualified product in New York state shall establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state." N.Y. Gen. Bus. Law § 898-b.2. "Reasonable controls and procedures" are defined as "policies that include, but are not limited to: (a) instituting screening, security, inventory and other business practices to prevent thefts of qualified products as well as sales of qualified products to straw purchasers, traffickers, persons prohibited from possessing firearms under state and federal law, or persons at risk of injuring themselves or others; and (b) preventing deceptive acts and practices and false advertising and otherwise ensuring compliance with all provisions of article twenty-two-A of this chapter." *Id.* § 898-a.2.

16. New York law criminalizes multiple activities, including the manufacture, transport, shipment, or sale of any "semiautomatic" rifle, pistol, or shotgun with various defined characteristics. N.Y. Penal Law §§ 265:00(21–22); 265.10(1–2).

17. Even though GLOCK does not manufacture, import, or sell any firearms that are illegal in New York pursuant to N.Y. Penal Law §§ 265:00(21–22); 265.10(1–2), I fear that

3

GLOCK could still face liability under the Act for any activity that New York deems to be "unreasonable under all the circumstances," even though in full compliance with all laws and regulations in the place undertaken.

18. GLOCK cannot eliminate potential liability under this provision of the Act because "unreasonable under all the circumstances" is not defined, is highly subjective and vague, and because this provision again creates liability for GLOCK based on the behavior of criminals who are outside of GLOCK's control.

19. I also fear that GLOCK a could face liability under the Act's vague and subjective requirement to "establish and utilize reasonable controls and procedures to prevent" firearms "from being possessed, used, marketed or sold unlawfully in New York state," even though multiple "controls and procedures" are already required by federal, state and local laws and regulations.

20. GLOCK cannot eliminate liability under the Act because, again, liability is predicated on the behavior of third party criminals outside of GLOCK's control.

21. Even if GLOCK could theoretically undertake drastic measures in an attempt to lessen potential liability (ceasing sales to AmChar Wholesale, Inc., for example), the economic impact to GLOCK would be irreparable and, regardless, the potential for litigation and liability under the Act would not be eliminated. Because the Act is vague and broad and encompasses fully lawful conduct, there is no action that GLOCK could take in order to insulate it from liability, other than ceasing operations altogether.

22. If the Act is not enjoined, GLOCK will be irreparably harmed by being forced to cease lawful, federally licensed operations or face liability, both of which would have a significant, harmful impact on the company's revenue. In addition, because the Act's standards are vague and

5

unattainable, and liability under the Act attaches based upon the behavior of third-party criminals outside of GLOCK's control, there is no way for GLOCK to comply. GLOCK will continually be at risk of litigation and potential liability unless it ceases doing business as a federally licensed firearms manufacturer.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of December, 2021.

By: _____
Carlos Guevara