# Exhibit M

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, Inc., et al.,<br><br>                    Plaintiffs,<br>v.<br><br>KATHY HOCHUL, in her official capacity as Governor of New York, and LETITIA JAMES, in her official capacity as New York Attorney General,<br><br>                    Defendants. | 1:21-cv-1348 (MAD/CFH) |

### DECLARATION OF SUSAN CUPERO ON BEHALF OF SMITH & WESSON INC.

I, Susan Cupero, hereby declare as follows:

1. I am over the age of 18 years, and I am qualified to submit this declaration on behalf of Smith & Wesson Inc. ("Smith & Wesson").

2. I am the Vice President, Sales at Smith & Wesson.

3. I have personal knowledge of the facts set forth in this declaration through direct involvement and by personally reviewing Smith & Wesson's records and information.

4. Smith & Wesson is a Delaware corporation with its principal place of business in Massachusetts. Smith & Wesson primarily manufactures firearms and parts for firearms. Smith & Wesson sells its products to government and law enforcement agencies in the United States and abroad, as well as to the commercial market through distributors and retailers throughout the United States.

5. Smith & Wesson is a federal firearms licensee ("FFL") licensed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

6. Smith & Wesson is a corporation engaged in the manufacture of firearms and so is a "gun industry member" as defined in New York's Act ("the Act") codified at N.Y. Gen. Bus. Law §§ 898-a–e.

7. Smith & Wesson is also a "manufacturer" as defined in the Protection of Lawful Commerce in Arms Act ("PLCAA"). 15 U.S.C. § 7903(2).

8. Smith & Wesson firearms and firearms components for civilian use are manufactured in Massachusetts, Maine, and Connecticut. Smith & Wesson does not manufacture any firearm or component part in New York.

9. Smith & Wesson sells firearms in compliance with applicable federal, state and local firearms laws to independent federally-licensed wholesale distributors; strategic retailers; buying groups consisting of certain large, national retailers; federal, state, and municipal law enforcement agencies; and government and military agencies (collectively "federally-licensed entities"), who in turn sell them in compliance with applicable firearms laws. Smith & Wesson does not sell firearms directly to civilians.

10. I understand the Act's preamble states that, "despite stringent state and local laws against the illegal possession of firearms [in New York] according to the Bureau of Alcohol, Tobacco, Firearms and Explosives statistics, 74% of firearms used in crimes in New York are purchased outside of New York." NY LEGIS 237 (2021), 2021 Sess. Law News of N.Y. Ch. 237 (S. 7196).

11. I understand the Act seeks to address "the ease at which legal firearms flow into the illegal market" and the criminal misuse of firearms in New York. *Id.*

12. The firearms industry is heavily regulated. All firearms industry members must comply with multiple federal, state, and local laws and regulations that govern the manufacture,

export, import, sale, and acquisition of firearms including: the National Firearms Act, 26 U.S.C. §§ 5801 *et seq.*; the Federal Gun Control Act of 1968, 18 U.S.C. §§ 921 *et seq.*; the Arms Export Control Act, 22 U.S.C. § 2778; Importation of Arms, Ammunition and Implements of War, 27 C.F.R § 447; Commerce in Firearms and Ammunition, 27 C.F.R § 478; as well as numerous state and local laws and regulations.

13. I understand the Act declares "No gun industry member, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain or contribute to a condition in New York state [*i.e.*, a public nuisance] that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a qualified product." N.Y. Gen. Bus. Law § 898-b(1).

14. I understand "qualified products" are only those that have "been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).

15. I understand the Act also declares that "All gun industry members who manufacture, market, import or offer for wholesale or retail sale any qualified product in New York state shall establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state." N.Y. Gen. Bus. Law § 898-b(2). "Reasonable controls and procedures" are defined as "policies that include, but are not limited to: (a) instituting screening, security, inventory and other business practices to prevent thefts of qualified products as well as sales of qualified products to straw purchasers, traffickers, persons prohibited from possessing firearms under state and federal law, or persons at risk of injuring themselves or others; and (b) preventing deceptive acts and practices and false advertising and otherwise ensuring compliance with all provisions of article twenty-two-A of this chapter." *Id.* § 898-a(2).

16. I also understand that New York law criminalizes multiple activities, including the manufacture, transport, shipment, or sale of any "semiautomatic" rifle, pistol, or shotgun with various defined characteristics such as a semiautomatic rifle that has "a pistol grip that protrudes conspicuously beneath the action of the weapon," N.Y. Penal Law § 265:00(21–22); 265.10(1–2).

17. Smith & Wesson is lawfully permitted to sell "semiautomatic" firearms of the type illegal under New York's Penal Law in multiple other states.

18. I fear that, if a criminal illegally transports into New York one of the semiautomatic firearms defined by New York Penal Law to be illegal, Smith & Wesson would face liability under the Act even though the initial manufacture, transport, and shipment of the firearm by Smith & Wesson was lawful and complied with all applicable laws and regulations in the place undertaken.

19. Smith & Wesson cannot eliminate liability under the Act's first prong because the behavior of third-party criminals is outside Smith & Wesson's control.

20. I also fear that, even setting aside the above activities that New York criminalizes, Smith & Wesson could still face liability under the Act for any activity that New York deems to be "unreasonable under all the circumstances," even though in full compliance with all laws and regulations in the place undertaken.

21. Smith & Wesson cannot eliminate liability under this provision of the Act because "unreasonable under all the circumstances" is not defined, is highly subjective and vague and because this provision again creates liability for Smith & Wesson based on the behavior of criminals who are outside Smith & Wesson's control.

22. I also fear that Smith & Wesson could face liability under the Act's vague and subjective requirement to "establish and utilize reasonable controls and procedures to prevent" firearms "from being possessed, used, marketed or sold unlawfully in New York state," even

though multiple "controls and procedures" are already required by federal, state, and local laws and regulations.

23. Smith & Wesson cannot eliminate liability under the Act because, again, liability is predicated on the behavior of third-party criminals outside Smith & Wesson's control.

24. Even if Smith & Wesson could theoretically undertake drastic measures in an attempt to lessen potential liability (discontinuing the manufacture of semi-automatic firearms entirely, for example), the economic impact to Smith & Wesson would be irreparable and, regardless, the potential for litigation and liability under the Act would not be eliminated. Because the Act is vague and broad and encompasses fully lawful conduct, there is no action that Smith & Wesson could take in order to insulate it from liability, other than ceasing operations altogether.

25. If the Act is not enjoined, Smith & Wesson will be irreparably harmed by being forced to cease lawful, federally licensed operations or face liability, both of which would have a significant, harmful impact on the company's revenue. In addition, because the Act's standards are vague and unattainable, and liability under the Act attaches based upon the behavior of third-party criminals outside Smith & Wesson's control, there is no way for Smith & Wesson to comply. Smith & Wesson will continually be at risk of litigation and potential liability unless it ceases doing business as a federally licensed firearms manufacturer.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of December, 2021.

By: _____
Susan Cupero