UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NATIONAL SHOOTING SPORTS FOUNDATION, INC.,
*et al.*,

                                        *Plaintiffs*,

                    v.

LETITIA JAMES, in her official capacity as Attorney
General of the State of New York,

                                        *Defendant*.

---

1:21-CV-1348

(MAD/CFH)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
*Attorney for the Defendant*
The Capitol
Albany, New York 12224-0341

MICHAEL G. McCARTIN
Assistant Attorney General | Special Counsel
Bar Roll No. 511158
Tel.: 518-776-2620
Michael.McCartin@ag.ny.gov

February 18, 2022

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ........................................................................................... 4

ARGUMENT ............................................................................................................... 7

  POINT I

    BECAUSE § 898 FALLS SQUARELY WITHIN PLCAA'S PREDICATE
    EXCEPTION, PLAINTIFFS' SUPREMACY CLAUSE CLAIMS MUST BE
    DISMISSED.................................................................................................. 7

  POINT II

    PLAINTIFFS' DORMANT COMMERCE CLAUSE CLAIMS FAIL. ........................ 10

  POINT III

    PLAINTIFFS' VOID FOR VAGUENESS CLAIM FAILS BECAUSE § 898
    APPROPRIATELY GIVES PROPPER NOTICE CONCERNING WHAT
    BEHAVIOUR IS UNLAWFUL UNDER THE STATUTE. .......................................... 19

  POINT IV

    PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION MUST BE
    DENIED. ...................................................................................................... 22

CONCLUSION ......................................................................................................... 25

## **TABLE OF AUTHORITIES**

**CASES**                                                                                          **PAGE(S)**

*5464 Route 212, LLC v. New York,*
    No. 1:19-cv-01510, 2020 U.S. Dist. LEXIS 66905 (N.D.N.Y. Apr. 16, 2020) .......................... 22

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. United States,*
    489 F. Supp. 3d 106 (E.D.N.Y. 2020) ...................................................................................... 8

*Am. Trucking Ass'ns v. Mich. PSC,*
    545 U.S. 429 (2005) .................................................................................................................. 15

*Arbitron Co. v. Phx. Broad. Corp.,*
    1997 U.S. Dist. LEXIS 11516 (S.D.N.Y. Aug. 6, 1997) .............................................................. 22

*Baude v. Heath,*
    538 F.3d 608 (7th Cir. 2008) ............................................................................................... 17-18

*Borey v. Nat'l Union Fire Ins..,*
    934 F.2d 30 (2d Cir. 1991) ...................................................................................................... 24

*Brown & Williamson Tobacco Corp. v. Pataki,*
    320 F.3d 200 (2d Cir. 2003) .................................................................................................... 18

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.,*
    476 U.S. 573 (1986) ........................................................................................................... 11, 15

*C & A Carbone, Inc. v. Clarkstown,*
    511 U.S. 383 (1994) ................................................................................................................. 10

*Chamber of Commerce v. Whiting,*
    563 U.S. 582 (2011) ................................................................................................................... 8

*Citibank, N.A. v. Citytrust,*
    756 F.2d 273 (2d Cir. 1985) .................................................................................................... 23

*City of N.Y. v. Beretta U.S.A. Corp.,*
    315 F. Supp. 2d 256 (E.D.N.Y. 2004) .................................................................................. 3, 12

*City of New York v. Beretta USA Corp.,*
    524 F3d 384 (2d Cir. 2008) ...................................................................................................... 2, 5

*Cotton States Mut. Ins. v. Anderson,*
    749 F.2d 663 (11th Cir. 1984) ................................................................................................. 20

*CTS Corp. v. Dynamics Corp.,*
    481 U.S. 69 (1987) ................................................................................................................... 18

*Cumberland Reclamation Co. v. Sec'y, United States Dep't of Interior*,
925 F.2d 164 (6th Cir. 1991) ................................................................................................ 8

*Doe v. Snyder*,
101 F. Supp. 3d 672 (E.D. Mich. 2015) ............................................................................... 19

*Donohue v. Mangano*,
886 F. Supp. 2d 126 (E.D.N.Y. 2012) ................................................................................. 23

*Eastern Profit Corp. v. Strategic Vision US LLC*,
2021 U.S. Dist. LEXIS 116334 (S.D.N.Y. June 22, 2021) ...................................................... 14

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ............................................................................................... 23

*Fort Gratiot Sanitary Landfill, Inc. v. Michigan*,
504 U.S. 353 (1992) ........................................................................................................... 10

*Freedom Holdings, Inc. v. Cuomo*,
624 F.3d 38 (2d Cir. 2010) ................................................................................................. 14

*Gary D. Peake Excavating v. Town Bd.*,
93 F.3d 68 (2d Cir. 1996) ................................................................................................... 15

*Granholm v. Heald*,
544 U.S. 460 (2005) ........................................................................................................... 16

*Grayned v. Rockford*,
408 U.S. 104 (1972) ........................................................................................................ 19-20

*Hamilton v. Accu-Tek*,
47 F. Supp. 2d 330 (E.D.N.Y. 1999) .................................................................................... 18

*Hanson Trust PLC v. ML SCM Acquisition Inc.*,
781 F.2d 264 (2d Cir. 1986) ............................................................................................... 22

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989) ........................................................................................................... 13

*Helguero v. Costa Mesa*,
134 F.3d 377 (9th Cir. 1998) (unpublished table decision) ................................................ 21

*Hill v. Colorado*,
530 U.S. 703 (2000) ........................................................................................................... 19

*Hornig v. Trustees of Columbia Univ.*,
2018 U.S. Dist. LEXIS 189268 (S.D.N.Y. Nov. 5, 2018) ....................................................... 24

*Hughes v. Oklahoma,*
    441 U.S. 322 (1979) ................................................................................................ 10

*Jacoby & Meyers, LLP v. Presiding Justices,*
    118 F. Supp. 3d 554 (S.D.N.Y. 2015) ..................................................................... 17

*Kachalsky v. Westchester,*
    701 F.3d 81 (2d Cir. 2012) ...................................................................................... 18

*Kassel v. Consol. Freightways Corp.,*
    450 U.S. 662 (1981) ....................................................................................14-15, 18-19

*Livery Round Table, Inc. v. New York City,*
    2018 U.S. Dist. LEXIS 65524 (S.D.N.Y. Apr. 18, 2018) ........................................ 24

*Lore v. Syracuse,*
    No 00 CV 1833, 2001 WL 263051 (N.D.N.Y. Mar. 9, 2001) ................................. 23

*Maine v. Taylor,*
    477 U.S. 131 (1986) ................................................................................................ 15

*Maryland v. King,*
    567 U.S. 1301 (2012) .............................................................................................. 25

*Monowise Ltd. v. Ozy Media, Inc.,*
    2018 WL 2089342 (S.D.N.Y. May 3, 2018) .......................................................... 23

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,*
    883 F.3d 32 (2d Cir. 2018) ...................................................................................... 22

*N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.,*
    684 F.3d 286 (2d Cir. 2012) .................................................................................... 22

*N.Y. State Rifle & Pistol Ass'n v. Cuomo,*
    990 F. Supp. 2d 349 (W.D.N.Y. 2013) ................................................................... 11

*National Paint & Coatings Ass'n v. Chicago,*
    45 F.3d 1124 (7th Cir. 1995) ................................................................................... 14

*New York ex rel. Schneiderman v. Actavis PLC,*
    787 F.3d 638 (2d Cir. 2015) .................................................................................... 24

*New York State Rifle & Pistol Ass'n. v. Cuomo,*
    804 F.3d 242 (2d Cir. 2015) ...................................................................................... 7

*Oliver v. New York,*
    2019 U.S. Dist. LEXIS 76272 (N.D.N.Y. May 6, 2019) ......................................... 24

*Orlando Sports Stadium, Inc. v. State,*
    262 So. 2d 881 (Fla. 1972) .................................................................................. 21

*Osborn v. Ozlin,*
    310 U.S. 53 (1940) .............................................................................................. 13

*Our Wicked Lady LLC v. Cuomo,*
    2021 U.S. Dist. LEXIS 44505 (S.D.N.Y. Mar. 9, 2021) ............................................ 25

*Peoples v. Speedway,*
    2007 U.S. Dist. LEXIS 111645 (S.D. Ind. Feb. 16, 2007) ........................................ 21

*Pike v. Bruce Church, Inc.,*
    397 U.S. 137 (1970) ..................................................................................... 11, 15

*Prescott v. Slide Fire Sols.,*
    410 F. Supp. 3d 1123 (D. Nev. 2019) .................................................................. 13

*Quintard Assocs. v. N.Y. State Liquor Auth.,*
    57 A.D.2d 462 (4th Dep't 1977)........................................................................... 21

*Rubin v. Garvin,*
    544 F.3d 461 (2d Cir. 2008) ............................................................................... 19

*Selevan v. New York Thruway Auth.,*
    2013 U.S. App. LEXIS 6140 (2d Cir. Mar. 27, 2013) ............................................. 10

*Seniors Civil Liberties Ass'n v. Kemp,*
    965 F.2d 1030 (11th Cir. 1992)........................................................................... 20

*Soto v. Bushmaster Firearms Int'l, LLC,*
    202 A.3d 262 (Conn. 2019), cert. denied 140 S. Ct. 513 (2019) ................................ 2, 9-10

*Southold v. E. Hampton,*
    477 F.3d 38 (2d Cir. 2007) ......................................................................... 11, 13

*Tom Doherty Assocs. v. Saban Entm't, Inc.,*
    60 F.3d 27 (2d Cir. 1995) .................................................................................. 22

*Turley v. Giuliani,*
    86 F. Supp. 2d 291 (S.D.N.Y. 2000) .................................................................... 23

*United States v. Broadnax,*
    601 F.3d 336 (5th Cir. 2010) .............................................................................. 12

*United States v. Decastro,*
    682 F.3d 160 (2d Cir. 2012) ................................................................................ 7

*United States v. Gresham*,
    118 F.3d 258 (5th Cir. 1997) ............................................................................. 12

*United States v. Krumrei*,
    258 F.3d 535 (6th Cir. 2001) ............................................................................. 21

*United States v. Nichols*,
    2020 U.S. Dist. LEXIS 149006 (D. Ariz. Aug. 14, 2020) ........................................ 20

*URI Student Senate v. Narragansett*,
    707 F. Supp. 2d 282 (D.R.I. 2010) ...................................................................... 21

*VIP of Berlin, LLC v. Berlin*,
    593 F.3d 179 (2d Cir. 2010) .............................................................................. 19

*Vizio, Inc. v. Klee*,
    886 F.3d 249 (2d Cir. 2018) ....................................................................... 10-11, 13

*Wiese v. Becerra*,
    263 F. Supp. 3d 986 (E.D. Cal. 2017) .................................................................. 25

*Williams v. Beemiller, Inc.*,
    33 N.Y.3d 523 (2019) ....................................................................................... 14

*Wyoming v. Oklahoma*,
    502 U.S. 437 (1992) ......................................................................................... 11

**CONSTITUTIONS**

United States Constitution ................................................................................. 1, 6

**FEDERAL STATUTES**

15 U.S.C.
    § 7903(4) ..................................................................................................... 12
    § 7903(5)(A)(iii) ....................................................................................... 2, 8-9

Lawful Commerce in Arms Act, 15 U.S.C.
    § 5921 .......................................................................................................... 1

PLCAA ................................................................................................... passim

**STATE STATUTES**

An Act to Fight Gun Violence ............................................................................... 4

N.Y. Gen. Bus. Law
§ 898 ........................................................................................................................... passim
§§ 898-a(1)–(6) ........................................................................................................ 4-5, 20
§ 898-b(1) ................................................................................................................... 4, 21
§ 898-b(1)–(2) ................................................................................................................... 6
§ 898-c(1)–(2) ................................................................................................................... 6
§ 898-d ............................................................................................................................... 6
§ 898-e ............................................................................................................................... 6

N.Y. General Business Law
§§ 898–a to 898–e ........................................................................................................... 1

N.Y. Penal Law
§ 240.45 ............................................................................................................................. 2

**STATE REGULATIONS**

Mem. of Law 17-19, ECF No. 2-1 ........................................................................................ 6

Mem. of Law 20 ................................................................................................................... 6

Mem. of Law 31 ............................................................................................................ 23-24

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................... 25

Federal Rules of Civil Procedure
Rule 65 ............................................................................................................................ 22

**MISCELLANEOUS AUTHORITIES**

Black's Law Dictionary ..................................................................................................... 20

Gillian E. Metzger, *Congress, Article IV, and Interstate Relations*, 120 Harv. L. Rev. 1468,
1521 (2007) .................................................................................................................. 14

Jack L. Goldsmith & Alan O. Sykes, *The Internet and the Dormant Commerce Clause*, 110
Yale L.J. 785, 795 (2001) ............................................................................................. 14

Defendant Letitia James, sued in her official capacity as Attorney General of the State of New York, respectfully submits this memorandum of law, together with the Declaration of Assistant Attorney General Michael G. McCartin ("McCartin Decl."), and the exhibits attached thereto, in support of Defendant's motion to dismiss the Complaint ("Compl." ECF. No. 1) and in opposition to Plaintiff's motion for a preliminary injunction.

## PRELIMINARY STATEMENT

In July 2021, to address the "specific harm illegal firearm violence causes certain New Yorkers due to the firearm industry's failure to implement reasonable safety measures," the New York Legislature provided that civil suits may be brought against "those responsible for the illegal or unreasonable sale, manufacture, distribution, importing or marketing of firearms … for the public nuisance caused by such activities." *See* L. 2021, ch. 237, § 1.

Plaintiffs, the National Shooting Sports Foundation, Inc. and 14 firearm manufacturers and sellers, including Beretta U.S.A., Glock, Sig Sauer, Smith & Wesson, and Strum, Ruger & Company, mount a facial constitutional challenge to this new law, codified as N.Y. General Business Law §§ 898–a to 898–e ("§ 898"), without coming close to showing that the law is unconstitutional in all of its possible applications. Plaintiffs ask this Court for emergency injunctive relief months after the law went into effect and without any allegation that it has been or imminently will be enforced against any of them or anyone else. They are not entitled to the relief they seek and, indeed, the entire action is subject to dismissal.

Plaintiffs allege that § 898 violates the United States Constitution in essentially three separate ways: (1) the Supremacy Clause because it is preempted by the federal Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 5921, ("PLCAA") (Compl. ¶¶ 74-91); (2) the Dormant Commerce Clause by disproportionately favoring New York's gun manufacturers against

1

out-of-state actors and by impermissibly regulating the gun industry beyond the borders of New York State (Compl. ¶¶ 92-113); and (3) the Due Process Clause by being void for vagueness (Compl. ¶¶ 114-32). None of these claims have merit.

First, Plaintiffs' the preemption claims are without merit. PLCAA does not prohibit actions against manufacturers or sellers of firearms that knowingly violate a state statute "applicable to the sale or marketing of the product" – *i.e.*, firearms. 15 U.S.C. § 7903(5)(A)(iii). PLCAA contains a clear exception, generally called the "predicate exception," that permits actions based upon violations of state regulations applicable to the sale, marketing and distribution of firearms and liability for violations of such laws. In *City of New York v. Beretta U.S.A. Corp.*, the Second Circuit specifically held that the predicate exception "encompass[es] statutes … that expressly regulate firearms." 524 F3d 384, 404 (2d Cir. 2008). This is vitally important here because, in that case (which is distinguishable from the case at hand), the Second Circuit dismissed a claim brought by the City of New York against members of the gun industry alleging predicate violations of a *general public nuisance statute*, N.Y. Penal Law § 240.45, which the Court concluded did not apply to the conduct challenged by plaintiffs. *Id*. at 399–400. The court explained that § 240.45 did not meet the predicate exception requirements of PLCAA because it was "a statute of general applicability that does not encompass the conduct of firearms manufacturers" challenged in the underlying complaint, *id*. at 400, and the predicate exception was instead meant to encompass statutes "that clearly can be said to regulate the firearms industry." *Id*. at 402.

The predicate exception, carefully enacted by Congress as part of PLCAA, specifically permits for § 898 to be lawfully passed by the New York State Legislature to address preventable gun violence. *See Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019), *cert. denied* 140 S. Ct. 513 (2019) (affirming denial of motion to dismiss and holding that Connecticut

Unfair Trade Practices Act was a predicate statute under PLCAA). Accordingly, Plaintiffs' preemption claim should be dismissed.

Second, Plaintiffs have no right to relief under their third, fourth, and fifth causes of action, which are styled as facial Dormant Commerce Clause claims. The Dormant Commerce Clause is primarily concerned with stopping protectionist state economic laws that discriminate against out-of-state businesses. Plaintiffs' Dormant Commerce Clause claims fail because § 898 quite obviously treats gun industry members evenhandedly based on their conduct, not their location within a particular state. Absent out-right discrimination against out-of-state businesses, which § 898 does not effect, a Dormant Commerce Clause challenge will fail, unless it is proven that the statute regulates extraterritorial conduct with no connection to New York or that the statute's burden on interstate commerce is "clearly excessive" in relation to local benefits. Plaintiffs cannot show that § 898 – which is focused on conduct that results in harms in New York State – regulates purely extraterritorial conduct in every application as is necessary for facial relief. And there is little question that the protection of New Yorkers' health and safety is a legitimate state concern. In fact, under the case law in this Circuit, state "nuisance doctrine" that is "aimed at protecting its citizens from the illegal use of firearms" is entirely "valid" since "any burden placed on interstate commerce is outweighed by the substantial public interest in the regulation of the sale of firearms to protect the health and safety of New York [ ] and its people." *City of N.Y. v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 286 (E.D.N.Y. 2004). Plaintiffs identify only speculative "burdens" that do not outweigh the statute's many benefits. Consequently, this Court should find that the provisions of § 898 are entirely compatible with the Dormant Commerce Clause.

Finally, this new legislation is not unconstitutionally vague. In the civil context, to meet the standard for a violation of the Due Process Clause for vagueness, a statute must be so vague

and indefinite as to be no rule at all. This heightened civil standard is certainly not met here. Plaintiffs argue for a different standard by claiming that the statute can potentially impose quasi-criminal penalties in the form of civil punitive damages, but the mere fact that a large sum of money is at stake does not automatically make this a penal statute. Moreover, even if construed under the vagueness standards governing penal statutes, a statute is not unconstitutionally vague if persons of reasonable intelligence can derive a core meaning from the statute.

Here, the legislation at issue expressly defines "deceptive acts or practices," "reasonable controls and procedures," "false advertising," "gun industry member," the terms "knowingly" and "recklessly," and "qualified product," thus properly providing clear guidance to members of the gun industry about their obligations and responsibilities under this new law. *See* N.Y. Gen. Bus. Law §§ 898-a(1)–(6). The legislation also prohibits "unreasonable" conduct that "create[s], maintain[s], or contribute[s] to a condition in New York state that endangers the safety or health of the public." N.Y. Gen. Bus. Law § 898-b(1). This language closely resembles New York's current general public nuisance law – a law that was adopted in 1965 and has been sustained and applied by courts in New York State for over half a century. Because § 898 closely mirrors that lawful 1965 statute, it too is good law under the Due Process Clause.

For all of these reasons, and for the further reasons that follow, Defendant's motion to dismiss should be granted and Plaintiffs' motion for a preliminary injunction should be denied.

## STATEMENT OF FACTS

**A.    N.Y. Gen. Bus. Law § 898 – An Act to Fight Gun Violence within New York**

On July 6, 2021, the Governor signed § 898 into law. This legislation "[r]elates to the dangers to the safety and health of the public caused by the sale, manufacturing, importing and marketing of firearms and whether such activity constitutes a public nuisance."  L. 2021, ch. 237.

As the Legislature stated, the "purpose" of the law is as follows: "To regulate the sale, manufacture, importation and marketing of firearms in relation to creating or maintaining a condition that endangers safety or health through the sale, manufacturing, importing or marketing of firearms within the guidelines of *City of New York v. Beretta USA Corp*., 524 F3d 384 (2d Cir. 2008)." L. 2021, ch. 237. Section 898 was carefully drafted by the Legislature to fit within the predicate exception made available by Congress, under the principles set forth in the Second Circuit's 2008 *Beretta* decision.

The "Legislative findings and intent" underpinning the statute explain that the effects of gun violence constitute a "public health crisis of gun violence in this state." L. 2021, ch. 237. The Legislature further found "that given the ease at which legal firearms flow into the illegal market, and given the specific harm illegal firearm violence causes certain New Yorkers, those responsible for the illegal or unreasonable sale, manufacture, distribution, importing or marketing of firearms may be held liable for the public nuisance caused by such activities. *Id.* Additionally, many New Yorkers, including many children, are gravely injured or killed unintentionally due to the firearm industry's failure to implement reasonable safety measures and the legislature finds that this failure also warrants liability." *Id.*

Section 898 defines several terms, including "deceptive acts or practices," "reasonable controls and procedures," "false advertising," "gun industry member," the terms "knowingly" and "recklessly," and "qualified product." N.Y. Gen. Bus. Law §§ 898-a(1)–(6). Section 898-b then details the "prohibited activities" in this way:

> 1. No gun industry member, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain or contribute to a condition in New York state that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a qualified product.

2. All gun industry members who manufacture, market, import or offer for wholesale or retail sale any qualified product in New York state shall establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state.

N.Y. Gen. Bus. Law § 898-b(1)–(2).

Section 898 declares that a violation of the new article that results in harm to the public is a "public nuisance" where such conduct is unlawful and unreasonable (*see* N.Y. Gen. Bus. Law § 898-c(1)–(2)), further provides for enforcement by the Attorney General in the name of the people of New York State, or by any city corporation counsel acting on behalf of the locality (*see* N.Y. Gen. Bus. Law § 898-d), and it also provides for a private right of action by any person, firm, corporation, or association that has been damaged as a result of a gun industry member's acts or omissions (*see* N.Y. Gen. Bus. Law § 898-e).

These provisions constitute common-sense efforts to protect the lives of all New Yorkers.

**B.      Plaintiffs' Allegations and Their Constitutional Claims**

Plaintiffs seek to thwart the Legislature's common-sense efforts to curb gun violence in the communities of New York. They assert that § 898 violates the United States Constitution in three ways. First, Plaintiffs allege that § 898 supposedly violates the Supremacy Clause by operation of the PLCAA, which allegedly preempts § 898. Pls.' Mem. of Law 17-19, ECF No. 2-1, Compl. ¶¶ 74-91.

Second, Plaintiffs allege that the legislation violates the Dormant Commerce Clause because it allegedly "discriminates against, attempts to control, and imposes severe burdens on interstate commerce." Pls.' Mem. of Law 20. Plaintiffs divide this claim into three parts. Count Three is a claim that § 898 facially discriminates against out-of-state gun industry members (Compl. ¶¶ 92-99). In Count Four, Plaintiffs allege that the law has a "[d]iscriminatory [e]ffect" toward out-of-state gun industry members by regulating purely extraterritorial conduct (Compl. ¶¶

100-07). Count Five alleges that § 898 places an "[u]ndue [b]urden" upon interstate commerce that outweighs the "local benefits" of the law (Compl. ¶¶ 108-13). Finally, in Count Six (Compl. ¶¶ 114-132), Plaintiffs allege that § 898 supposedly violates the Due Process Clause by being void for vagueness. They ground their claim in the observation that the new legislation does not define words like "condition," "contribution," or "contribute" even though it defines numerous other key terms. *See* Pls.' Mem. of Law 29-30.

## ARGUMENT

## POINT I

### BECAUSE § 898 FALLS SQUARELY WITHIN PLCAA'S PREDICATE EXCEPTION, PLAINTIFFS' SUPREMACY CLAUSE CLAIMS MUST BE DISMISSED.

A facial challenge to the provisions of a statute, like the one at hand, can succeed only if Plaintiffs "show that 'no set of circumstances exists under which the [statute] would be valid, *i.e.*, that the law is unconstitutional in all of its applications,' or at least that it lacks a 'plainly legitimate sweep.'" *United States v. Decastro*, 682 F.3d 160, 168 (2d Cir. 2012) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)) (alteration in *Decastro*); *see also New York State Rifle & Pistol Ass'n. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) (citing *United States v. Salerno*, 481 U.S. 739 (1987)). Plaintiffs have not – and cannot – meet this requirement.

Here, Plaintiffs' Supremacy Clause claim rests upon the assertion that § 898 does not constitute a qualifying statute under PLCAA's predicate exception. If § 898 falls within that exception, as the New York State Legislature and Defendant assert, then the Supremacy Clause claim quite obviously fails. An action is lawful under PLCAA if it is:

> [a]n action in which a manufacturer or seller of a qualified product ***knowingly violated a State or Federal statute applicable to the sale or marketing of the product,*** and the violation was a proximate cause of the harm for which relief is sought, ***including*** –

(I)  any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II)  any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of title 18, United States Code.

15 U.S.C. § 7903(5)(A)(iii) (emphasis added). The examples given here are clearly a non-exclusive list of the types of qualifying state statutes that would fall under PLCAA's predicate exception. *Cumberland Reclamation Co. v. Sec'y, United States Dep't of Interior*, 925 F.2d 164, 167 (6th Cir. 1991) ("As a matter of statutory construction, the use of the word 'including' indicates that Congress did not intend for the list to be exhaustive."); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. United States*, 489 F. Supp. 3d 106, 134 (E.D.N.Y. 2020) ("a word such as 'includes' suggests a non-exhaustive list").

Accordingly, as long as § 898 can be properly characterized as being "a State or Federal statute applicable to the sale or marketing of the product [*i.e.*, meaning firearms]," it is properly the kind of statute that Congress stated would be lawful under the predicate exception of PLCAA. Section 898 surely is such a statute, and there is no preemption where a state statute fully complies with a savings clause set forth in federal law. *Chamber of Commerce v. Whiting*, 563 U.S. 582, 600 (2011) ("Arizona's procedures simply implement the sanctions that Congress expressly allowed Arizona to pursue through licensing laws. Given that Congress specifically preserved such authority for the States, it stands to reason that Congress did not intend to prevent the States from using appropriate tools to exercise that authority.").

In *Beretta*, the Second Circuit specifically held that the predicate exception contained in 15 U.S.C. § 7903(5)(A)(iii) "encompass[es] statutes … that expressly regulate firearms." 524 F.3d at 404; *see also id.* at 402 (holding that a statute "that clearly can be said to regulate the firearms industry" falls within the predicate exception). Section 898 is undoubtedly meant to "regulate the firearms industry" so it qualifies as a predicate exception under the Second Circuit's controlling reading of PLCAA. Stated in a different way, because this new legislation is a firearm-specific nuisance statute that expressly regulates the conduct of firearms manufacturers and sellers, the legislation falls within the predicate exception of PLCAA, and violators of this new law would not be entitled to immunity under PLCAA.

Undoubtedly, if a gun industry member elected to engage in repeated straw sales of multiple firearms to a felon for transport and sale in New York State, then certainly that member could potentially be held liable here. A firearms seller which intentionally destroyed records to hide illegal gun sales could potentially be liable here. Again, in such cases, the application of the law would clearly fall under the predicate exception and so any preemption challenge would fail.

In *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019), *cert. denied* 140 S. Ct. 513 (2019), the Connecticut Supreme Court ruled that a wrongful death lawsuit may go forward against the manufacturer, distributor, and dealer of the semiautomatic rifle used by the assailant in the mass shooting at Sandy Hook Elementary School in Newtown. In doing so, the court conducted a painstaking analysis of the predicate exception and concluded by stating:

> We are confident [ ] that, if there were credible allegations that a firearms seller had run explicit advertisements depicting and glorifying school shootings, and promoted its products in video games, such as "School Shooting," that glorify and reward such unlawful conduct, and if a troubled young man who watched those advertisements and played those games were inspired thereby to commit a terrible crime like the ones involved in the Sandy Hook massacre, then even the most ardent sponsors of PLCAA would not have wanted to bar a consumer protection lawsuit seeking to hold the supplier accountable for the injuries wrought by such

unscrupulous marketing practices.

*Soto*, 202 A.3d at 324 (footnote omitted). After this decision, the gun-industry defendants sought

review before the U.S. Supreme Court, and no member of the Court dissented from the denial of

cert. 140 S. Ct. 513.

For these reasons, there is no merit Plaintiffs' Supremacy Clause or preemption claims.

**POINT II**

**PLAINTIFFS' DORMANT COMMERCE CLAUSE CLAIMS FAIL.**

Plaintiffs' Dormant Commerce Clause claims must also be dismissed. The Supreme Court

has interpreted the Commerce Clause "not only as an authorization for congressional action, but

also, even in the absence of a conflicting federal statute, as a restriction on permissible state

regulation." *Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979). This "'negative' or 'dormant' aspect

of the Commerce Clause prohibits States from 'advancing their own commercial interests by

curtailing the movement of articles of commerce, either into or out of the state.'" *Fort Gratiot*

*Sanitary Landfill, Inc. v. Michigan*, 504 U.S. 353, 359 (1992) (quoting *H.P. Hood & Sons, Inc. v.*

*Du Mond*, 336 U.S. 525, 535 (1949)); *Vizio, Inc. v. Klee*, 886 F.3d 249, 254 (2d Cir. 2018). "The

central rationale for the rule against discrimination is to prohibit state or municipal laws whose

object is local economic protectionism, laws that would excite those jealousies and retaliatory

measures the Constitution was designed to prevent." *C & A Carbone, Inc. v. Clarkstown*, 511 U.S.

383, 390 (1994). *See also Selevan  v. New York Thruway Auth.*, 2013 U.S. App. LEXIS 6140, at

*3 n.1 (2d Cir. Mar. 27, 2013) (holding that case law involving the Dormant Commerce Clause

"is driven by concern about economic protectionism" and is meant to prevent "regulatory measures

designed to benefit in-state economic interests by burdening out-of-state competitors").

A law that regulates purely extraterritorial commerce or one that purposely discriminates

against interstate commerce in favor of intrastate commerce will survive only if it is "demonstrably justified by a valid factor unrelated to economic protectionism." *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992). But a law such as the one at bar that only incidentally burdens interstate commerce is subject to the more permissive balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), and will only be struck down if the burden imposed on interstate commerce clearly exceeds the local gains asserted by the government. *Id*. "The party challenging a law as either clearly discriminatory or violative of *Pike* bears the threshold burden of demonstrating that it has a disparate impact on interstate commerce." *Southold v. E. Hampton*, 477 F.3d 38, 47 (2d Cir. 2007). *See also Vizio*, 886 F.3d at 255 ("the burden remains with [plaintiffs] to demonstrate that [the statute] imposes an impermissible burden on interstate commerce").

### A.  Section 898 Does Not Facially Discriminate Against Interstate Commerce.

Under Dormant Commerce Clause jurisprudence, a challenged provision is analyzed under a two-prong test: First, courts ask whether the statute "discriminates" against interstate commerce. If it does, courts will apply the strictest scrutiny to the ordinance. If it does not, courts proceed to "balance" the statute's "incidental" burdens on interstate commerce against its "putative local benefits." *See Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986); *Pike*, 397 U.S. at 142; *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 990 F. Supp. 2d 349, 379-80 (W.D.N.Y. 2013).

In the first parts of Plaintiffs' Dormant Commerce Clause claim, *i.e.*, Counts Three and Four, they allege that § 898 is unconstitutional because it supposedly favors hypothetical New York firearm manufactures who make and sell their firearms "solely within the State of New York."  Pls' Mem. of Law 21-22. But Plaintiffs fail to allege the existence of any such New York company. Stated differently, absent an allegation that there are, in fact, actual in-state firearm

manufacturers who would not be subject to § 898, there can be no viable Dormant Commerce Clause claim, since all in-state firearm manufacturers and all out-of-state firearm manufacturers would be treated equally.

In attempting to state a Dormant Commerce Clause claim, Plaintiffs point to the definition of "qualified product." *See* Compl. ¶ 97. Section 898(a)(6) defines that term as having "the same meaning as defined in 15 U.S.C. section 7903(4)." In turn, 15 U.S.C. § 7903(4) defines a "qualified product" as "a firearm …, including any antique firearm …, or a ***component part*** of a firearm …, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4) (emphasis added). Plaintiffs seized upon this definition and argue that New York firearm manufacturers who do *all* of their business within New York would therefore not be subject to § 898 because their product would not have ever travelled within interstate commerce. Plaintiffs are wrong, of course, because a "qualified product" would also constitute any firearm whose "component part" has travelled within interstate commerce. *See United States v. Gresham*, 118 F.3d 258, 265 (5th Cir. 1997) (finding when "the component part of the firearm traveled in interstate commerce, rather than the firearm itself," that is still sufficient to show an adequate connection to interstate commerce); *United States v. Broadnax*, 601 F.3d 336, 341-42 (5th Cir. 2010) (same). This means that so long as a New York manufacturer of a firearm uses even one item that has travelled within interstate commerce at some point in time – for example, a screw, spring, or piece of metal, hard plastic, or wood – the firearm would fall within § 898's definition of a "qualified product," making that New York firearms manufacturer subject to § 898 as much as any out-of-state gun industry member would be. And in light of the fact that the Second Circuit has already recognized that "the firearms industry is interstate – indeed, international – in nature," *Beretta*, 524 F.3d at 394, it is quite clear that even if a New York firearms manufacturer never sold

a gun across state lines into one of the other 49 states (or in the international market), they would still be subject to § 898 because at least a "component part" of their firearms – again, one screw, one spring, one small piece of metal, hard plastic, or even one piece of wood on the handle – would have been shipped or transported within interstate commerce at some point in time. *See Prescott v. Slide Fire Sols*., 410 F. Supp. 3d 1123, 1132 (D. Nev. 2019) ("bump stocks are component parts of firearms, rendering them qualified products under PLCAA").

As such, the premise of Plaintiffs' Dormant Commerce Clause claims is defeated by the Second Circuit's recognition that "the firearms industry is interstate … in nature." That being the case, Plaintiffs cannot show that there is an actual New York State firearms manufacturer who sell their firearms "solely within the State of New York." This, of course, means that all New York-based firearms manufacturers would be subject to § 898 – equally with out-of-state firearms manufacturers. Thus, the statute is "indifferent to the point of origin" of the firearms that fall within its ambit and it "does not confer a competitive advantage upon local business *vis-a-vis* out-of-state competitors." *Southold,* 477 F.3d at 48-49. In other words, § 898 "treat[s] all private companies exactly the same, no matter from which state they hail." *Vizio,* 886 F.3d at 260 (omits internal quotations and citation).

**B. Section 898 Does Not Unconstitutionally Regulate Extraterritorial Conduct.**

"The mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids." *Osborn v. Ozlin*, 310 U.S. 53, 62 (1940). Put another way, while it is true that a statute may be unconstitutional when it regulates commerce that takes place fully outside its borders, *Healy v. Beer Inst., Inc*., 491 U.S. 324, 336 (1989), "the Commerce Clause's ban on extraterritorial regulation must be applied carefully so as not to invalidate many state laws that have permissible

extraterritorial effects." *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 68 n.19 (2d Cir. 2010); *See National Paint & Coatings Ass'n v. Chicago*, 45 F.3d 1124, 1130-31 (7th Cir. 1995) (observing that "almost every state and local law – indeed, almost every private transaction – affects interstate commerce" and warning that if the Dormant Commerce Clause applied to "all laws affecting commerce – that is, to all state and local laws addressing a subject that Congress *could* regulate, if it chose – then judicial review of statutory wisdom after the fashion of *Lochner* would be the norm") (emphasis in original)); Gillian E. Metzger, *Congress, Article IV, and Interstate Relations*, 120 Harv. L. Rev. 1468, 1521 (2007) ("[T]he extent of the prohibition on the states themselves should not be overstated. In practice, states exert regulatory control over each other all the time ... . The prohibition on extraterritorial legislation is thus understood only to constrain a state from formally asserting legal authority outside its borders ... ."); Jack L. Goldsmith & Alan O. Sykes, *The Internet and the Dormant Commerce Clause*, 110 Yale L.J. 785, 795 (2001) ("Innumerable state laws affect outsiders, and no one thinks that all (or even most) of these laws violate the dormant Commerce Clause.").[1]

Stated differently, there is no viable Dormant Commerce Clause claim here because "there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it." *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670 (1981) (quoting *Pacific Co. v. Arizona*, 325 U.S. 761, 767 (1945)); *Eastern Profit Corp. v. Strategic Vision US LLC*, 2021 U.S. Dist.

---

[1] Any claim brought under § 898 against an out-of-state firearm manufacturer or seller would still have to comply with New York due-process precedent establishing long-arm jurisdiction. *See Williams v. Beemiller, Inc.*, 33 N.Y.3d 523 (2019) (long-arm jurisdiction could not be exercised over an Ohio firearm merchant who sold a gun to an Ohio resident in Ohio which was subsequently resold on the black market and used in a shooting in New York under due-process precedent because he lacked minimum contacts with New York). This precedent significantly undercuts Plaintiffs' assertion that § 898 allows out-of-state gun industry members to be arbitrarily and indiscriminately dragged into court in New York State. It plainly does not.

LEXIS 116334, at *72 (S.D.N.Y. June 22, 2021). Thus, "a State's power to regulate commerce is never greater than in matters traditionally of local concern. … For example, regulations that touch upon safety … are those that the Court has been most reluctant to invalidate. …  Indeed, if safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce. … Those who would challenge such *bona fide* safety regulations must overcome a strong presumption of validity." *Kassel*, 450 U.S. at 670 (omits internal quotations and citations). Again, such strong safety interests are definitely in play here.

### C.  Section 898 Does Not Place an Undue Burden on Interstate Commerce

Because § 898 does not "discriminate" against interstate commerce, this Court should "balance" the ordinance's "incidental" burdens on interstate commerce against its "putative local benefits." *See Brown-Forman Distillers*, 476 U.S. 579; *Pike*, 397 U.S. at 142. But in conducting this balancing the Court must keep in mind that, although the Commerce Clause limits the ability of States and localities to burden the free flow of interstate commerce, "it does not elevate free trade above all other values." *Maine v. Taylor*, 477 U.S. 131, 151 (1986). In fact, for purposes of analyzing Dormant Commerce Clause cases, "[l]egislation pertaining to public health and safety consistently has been recognized as an important local interest." *Gary D. Peake Excavating v. Town Bd.*, 93 F.3d 68, 76 (2d Cir. 1996). The Supreme Court has often affirmed that the Commerce Clause in no way "displaces States' authority to shelter [their] people from menaces to their health or safety." *Am. Trucking Ass'ns v. Mich. PSC*, 545 U.S. 429, 434 (2005) (internal quotation marks omitted). Section 898 is precisely the type of legislation permitted by the Constitution because it enables New York State to better protect its citizens from the gun violence that is occurring in New York with all too much frequency.

The statute at issue here is readily distinguishable from the statutes that the Supreme Court invalidated, such as the statute in *Granholm v. Heald*, 544 U.S. 460 (2005). Noting that that statute allowed direct shipping from in-state wineries to consumers but did not permit out-of-state wineries to ship direct, the Court concluded that "the object and design" of those statutes was "to grant in-state wineries a competitive advantage over wineries located beyond the States' borders." *Id*. at 466. And it explained that laws whose primary purpose is simply to provide a State's own businesses with a "competitive advantage" are impermissible:

> States may not enact laws that burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses. This mandate "reflect[s] a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation." *Hughes v. Oklahoma*, 441 U.S. 322, 325-326, 60 L. Ed. 2d 250, 99 S. Ct. 1727 (1979).

*Granholm*, 544 U.S. at 472. Nonetheless, the court recognized that its precedent permitted states to "forbid shipments of alcohol to consumers for personal use, provided that the States treated in-state and out-of-state liquor on the same terms." *Id*. at 481. "If a State chooses to allow direct shipment of wine, it must do so on evenhanded terms." *Id*. at 493.

Section 898 passes constitutional muster under the principles set forth in *Granholm*. In *Arnold Wines, Inc. v. Boyle*, the Second Circuit rejected an out-of-state retailer's Dormant Commerce Clause challenge to a New York statute that permitted in-state retailers to deliver directly to the homes of consumers, but did not allow out-of-state retailers to do the same. 571 F.3d 185, 188 (2d Cir. 2009). In assessing the statutory scheme, the court noted that the main purpose of the statute was to prevent "organized crime [from] dominat[ing] the industry." *Id*. at 187. The court then held that adopting plaintiffs' argument and barring New York from requiring that all liquor imported into New York go through a licensed wholesaler and retailer inside New

16

York State would be tantamount to eliminating an even-handed distribution system, a system expressly sanctioned by the *Granholm* court. *Id*. at 191.

The lesson to be learned from these cases is this: § 898 does not offend the Dormant Commerce Clause because under this statute in-state manufacturers and sellers of firearms, as well as out-of-state manufacturers and sellers of firearms, are subject to the same exact firearm-specific public nuisance statute. And that is the central issue in any Dormant Commerce Clause case: lawful enactments require an even-handed treatment of both in-state and out-of-state businesses, just as existed in *Arnold Wines* and as exists here.

Other circuit courts have held similarly. In *Baude v. Heath*, 538 F.3d 608 (7th Cir. 2008), the Seventh Circuit addressed an Indiana statute that required an in-person ID verification in order to purchase wine. Under this statutory scheme, any consumer who wanted to receive direct shipments of wine from any winery, whether inside or outside of Indiana, had to visit the winery at least once and supply proof of name, age, address, and telephone number, plus a verified statement that the wine was intended for personal consumption. *Baude*, 538 F.3d at 613. This statute had an obvious adverse impact on out-of-state wineries that wished to market wine directly to Indiana consumers *via* the internet. *Id*. at 612. Nonetheless, the court held that because "the rule applie[d] to every winery, no matter where it [wa]s located," it was not facially discriminatory, thus, the court employed the less-restrictive *Pike* test noting that "State laws regularly pass this test." *Id*. at 611; *see also Jacoby & Meyers, LLP v. Presiding Justices*, 118 F. Supp. 3d 554, 577 (S.D.N.Y. 2015) ("This [*Pike* test] is not a high bar."). The court then held that "keeping alcohol out of minors' hands is a legitimate, indeed a powerful, interest." *Baude*, 538 F.3d at 613. With this in mind, even in the absence of compelling data to support the benefits of in-person identification, the court rejected plaintiffs' argument that the face-to-face ID requirement did not

actually reduce the number of minors acquiring alcohol. *Id.* Thus, accepting Indiana's reasoning that face-to-face ID verification would reduce wine shipments to minors, the Seventh Circuit determined that there was no violation of the Dormant Commerce Clause. *Id.* at 615.

In light of these cases, Plaintiffs' undue burden Dormant Commerce Clause claim fails to state a viable cause of action under *Pike* and progeny. Contrary to Plaintiffs' assertions, Plaintiffs are in no way prevented from engaging in the sale of firearms within New York. Also, in-state and out-of-state gun industry members are treated equally. Additionally, the interests promoted by § 898 are even stronger than those at stake in *Baude*. Indeed, just as "[t]he danger of criminal misuse of guns loose within a state arguably gives rise to an *intense state interest*," *Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330, 342 (E.D.N.Y. 1999) (emphasis added), the prevention of gun violence within New York's communities certainly constitutes an equally intense state interest. Section 898 was plainly directed at addressing those legitimate and pressing concerns. *See Kachalsky v. Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) ("New York has substantial, indeed compelling, governmental interests in public safety and crime prevention").

When a court performs a *Pike* analysis it must not be "inclined to second-guess the empirical judgment of lawmakers concerning the utility of legislation." *CTS Corp. v. Dynamics Corp.*, 481 U.S. 69, 92 (1987) (citation and quotation marks omitted). Indeed, the *Pike* test does not invite courts to estimate "the probable costs and benefits of the statute, nor is it within the competency of courts to do so." *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003). Instead, "the [C]ourt must confine its analysis to the purposes the lawmakers had for maintaining the regulation," and "the only relevant evidence concerns whether the lawmakers could rationally have believed that the challenged regulation would foster those purposes." *Kassel*, 450 U.S. at 680 (Brennan, J. concurring) (citations omitted). This means that under a proper

analysis of the Dormant Commerce Clause, if § 898 is not "wholly irrational in light of its purposes," it must be upheld. *Id*. at 680-81.

In sum, because the Legislature has taken rational and strong steps to protect New York's citizens from the fear of gun violence, and because the Legislature certainly was not motivated in any way to protect New York's firearm businesses from the rigors of competition in the national market, § 898, which treats in-state and out-of-state gun industry members equally, complies with the Dormant Commerce Clause. Thus, Courts Three, Four, and Five of Plaintiffs' Complaint must be dismissed.

## POINT III

**PLAINTIFFS' VOID FOR VAGUENESS CLAIM FAILS BECAUSE § 898 APPROPRIATELY GIVES PROPER NOTICE CONCERNING WHAT BEHAVIOUR IS UNLAWFUL UNDER THE STATUTE.**

Plaintiffs' claim that § 898 violates the Due Process Clause because it is allegedly void for vagueness fails. Although Plaintiffs complain that the new legislation does not define words like "condition," "contribution," or "contribute" (*see* Pls.' Mem. of Law 29-30), mathematical precision is not required in this context, *see Grayned v. Rockford*, 408 U.S. 104, 110 (1972). A statute is not vague if its text affords people of ordinary intelligence "a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 733 (2000); *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008). "The degree of vagueness tolerated in a statute varies with its type," and "economic regulations are subject to a relaxed vagueness test…" *VIP of Berlin, LLC v. Berlin*, 593 F.3d 179, 186 (2d Cir. 2010) (quoting *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008)). Moreover, the statute in question here puts bad actors on sufficient notice about what kind of behavior is unlawful, so it is not unconstitutionally void for vagueness. *See Doe v. Snyder*, 101 F. Supp. 3d 672, 688 (E.D. Mich. 2015) ("[A] failure to define a term within a statute or

ordinance does not render the statute unconstitutionally vague, where the common meaning of the word provides both adequate notice of the conduct prohibited and of the standards for enforcement.") (omits internal quotations and citation); *United States v. Nichols*, 2020 U.S. Dist. LEXIS 149006, at *7 (D. Ariz. Aug. 14, 2020) ("Black's Law Dictionary … defines 'marketing' as the promotion of goods. Using the primary definition of 'marketing,' the statute is unambiguous.").

Furthermore, in the civil context, to meet the standard for a violation of the Due Process Clause for vagueness, "[a]statute must be 'so vague and indefinite as really to be no rule at all.'" *Seniors Civil Liberties Ass'n v. Kemp*, 965 F.2d 1030, 1036 (11th Cir. 1992) (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)). This standard is certainly not met here. Nor can Plaintiffs substitute the standard that applies in the criminal context, by arguing that the statute can potentially impose quasi-criminal penalties in the form of civil punitive damages. "The mere fact that a large sum of money is at stake does not necessarily make this a penal statute." *Cotton States Mut. Ins. v. Anderson*, 749 F.2d 663, 669 n.9 (11th Cir. 1984). And "even if construed as a penal statute, a non-criminal statute is not unconstitutionally vague 'if persons of reasonable intelligence can derive a core meaning from the statute.'" *Id.* "[F]lexibility and reasonable breadth" are acceptable in any kind of statute, since "meticulous specificity" is not required. *Grayned*, 408 U.S. at 110.

The legislation at issue here defines "deceptive acts or practices," "reasonable controls and procedures," "false advertising," "gun industry member," the terms "knowingly" and "recklessly," and "qualified product," thus properly providing clear guidance to members of the gun industry about their obligations and responsibilities under this new law. *See* N.Y. Gen. Bus. Law §§ 898-a(1)–(6). The legislation also prohibits "unreasonable" conduct that "create[s], maintain[s], or

contribute[s] to a condition in New York state that endangers the safety or health of the public." N.Y. Gen. Bus. Law § 898-b(1). This language closely resembles New York's current general public nuisance law – a law that was adopted in 1965 and has been upheld and applied by multiple New York courts over the course of half a century. Because § 898 closely mirrors that lawful 1965 New York statute, it too is good law under the Due Process Clause.

Furthermore, despite Plaintiffs' arguments to the contrary, "a statute is not void-for-vagueness merely because it uses the word 'reasonable' or 'unreasonable.'" *United States v. Krumrei*, 258 F.3d 535, 538 (6th Cir. 2001). *See also Quintard Assocs. v. N.Y. State Liquor Auth.*, 57 A.D.2d 462, 465 (4th Dep't 1977) (rejecting void for vagueness challenge to a rule prohibiting "any noise disturbance, misconduct and disorder" which "adversely affects or tends to affect the protection, health, welfare, safety or repose" of the public). Indeed, the case law is clear on this topic. *See, e.g., Orlando Sports Stadium, Inc. v. State*, 262 So. 2d 881, 884 (Fla. 1972) (dismissing a due process challenge to Florida's public nuisance statute and noting that "an attempt to enumerate all nuisances would be almost the equivalent as an attempt to classify the infinite variety of ways in which one may be annoyed or impeded in the enjoyment of his rights"); *Peoples v. Speedway*, 2007 U.S. Dist. LEXIS 111645 (S.D. Ind. Feb. 16, 2007) (similarly upholding an Indiana public nuisance statute on a void for vagueness challenge); *URI Student Senate v. Narragansett*, 707 F. Supp. 2d 282, 295 (D.R.I. 2010) ("the [nuisance] Ordinance is not unconstitutionally vague because it uses the words 'substantial,' 'significant,' and 'nuisance.'"); *Helguero v. Costa Mesa*, 134 F.3d 377 (9th Cir. 1998) (unpublished table decision) (rejecting a void for vagueness challenge to an entertainment permit ordinance designed to fight noise that turned on the definition of a "substantially adverse impact").

For all of these reasons, Plaintiffs' third constitutional claim must be dismissed.

<u>POINT IV</u>

**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION MUST
BE DENIED.**

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions. As "one of the most drastic tools in the arsenal of judicial remedies," injunctive relief "must be used with great care." *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986). A party seeking a preliminary injunction generally must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). *See also 5464 Route 212, LLC v. New York*, No. 1:19-cv-01510 (BKS/DJS), 2020 U.S. Dist. LEXIS 66905, at *11 (N.D.N.Y. Apr. 16, 2020).

**A.      Plaintiffs have not shown a likelihood of success on the merits**

Where, as here, a plaintiff seeks a mandatory injunction – one that "alter[s] the status quo by commanding some positive act" – a higher standard applies. *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). Plaintiffs requesting a mandatory injunction must show "a clear or substantial likelihood of success on the merits." *N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). However, Plaintiffs fail to meet this heightened burden. Indeed, as established in Points I, II, and III above, this action fails on threshold grounds and should be dismissed outright, so no injunctive relief should be granted. *See Arbitron Co. v. Phx. Broad. Corp.*, 1997 U.S. Dist. LEXIS 11516, at *17-18 (S.D.N.Y. Aug. 6, 1997) (a case that is "insufficient to withstand a motion to dismiss, . . . a fortiori [cannot] establish likelihood of success on the merits or serious questions going to the merits").

Furthermore, a showing of irreparable harm is "the single most important prerequisite for

the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). When a plaintiff seeks injunctive relief based on an alleged constitutional deprivation, "the two prongs of the preliminary injunction threshold merge into one ... [and] in order to show irreparable injury, plaintiff must show a likelihood of success on the merits." *Turley v. Giuliani*, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000). Plaintiffs cannot do so here for the reasons explained above.

### B.      Plaintiffs fail to establish they will suffer irreparable harm

Plaintiffs' have also wrongly assumed that the mere allegation of a violation of a fundamental right is sufficient to satisfy the irreparable harm prong. *See* Pls.' Mem. of Law 31. "[T]he mere allegation of a constitutional infringement itself does not constitute irreparable harm." *Lore v. Syracuse*, No 00 CV 1833, 2001 WL 263051, at *6 (N.D.N.Y. Mar. 9, 2001). *See also Donohue v. Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012) ("[T]he assertion of constitutional injury is insufficient to automatically trigger a finding of irreparable harm.").

Furthermore, the statute in question was enacted on July 6, 2021, more than five (5) months before it was challenged. Under the case law in this Circuit, Plaintiffs' more-than-five-month-long delay in seeking a preliminary injunction is simply too long of a wait to obtain a preliminary injunction. As the Second Circuit has explained, "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) (citations omitted). "There is no bright-line rule for how much delay is too much, but courts in this Circuit 'typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.'" *Monowise Ltd. v. Ozy Media, Inc.*, 2018 WL 2089342, at *2 (S.D.N.Y. May 3,

2018) (collecting cases). *See also Oliver v. New York*, 2019 U.S. Dist. LEXIS 76272, at *16-*17 (N.D.N.Y. May 6, 2019) ("'Though such delay may not warrant the denial of ultimate relief, it may, 'standing alone, . . . preclude the granting of preliminary injunctive relief.'") (citations omitted); *Hornig v. Trustees of Columbia Univ.*, 2018 U.S. Dist. LEXIS 189268 (S.D.N.Y. Nov. 5, 2018) (holding that the plaintiff's ttwo-and-a-half-month delay in seeking injunctive relief undermined a finding of irreparable injury); *Livery Round Table, Inc. v. New York City*, 2018 U.S. Dist. LEXIS 65524, at *24 (S.D.N.Y. Apr. 18, 2018) ("A delay of about three months undercuts a showing of immediate and irreparable injury."). Plaintiffs' more-than-five-month-long delay here completely defeats their claim for a preliminary injunction.

Additionally, none of the fifteen Plaintiffs have shown that they are in jeopardy of having the statute enforced against them while this litigation is completed. This is fatal to their claims because "[i]rreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (quoting *Forest City Daly Hous., Inc. v. North Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)). Plaintiffs' assertion of a general "threat" to their "businesses"  (Pls.' Mem. of Law 31) does not suffice because "[m]onetary loss alone will generally not amount to irreparable harm ... unless the movant provides evidence of damage that cannot be rectified by financial compensation," *Borey v. Nat'l Union Fire Ins..*, 934 F.2d 30, 34 (2d Cir. 1991).

## C.   The equities balance in favor of the State's efforts to protect the public from gun violence

Lastly, the "balancing of the equities" and the "public interest" determination strongly favor Attorney General James and the New Yorkers that she represents: "The State has a substantial interest in preventing and limiting gun violence, as well as in enforcing validly enacted

statutes." *Wiese v. Becerra*, 263 F. Supp. 3d 986, 994 (E.D. Cal. 2017). Indeed, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury[,]' particularly where there would be 'an ongoing and concrete harm to ... public safety interests." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (citation omitted); *Our Wicked Lady LLC v. Cuomo*, 2021 U.S. Dist. LEXIS 44505, at *17-18 (S.D.N.Y. Mar. 9, 2021) (same). Thus, Plaintiffs' motion for a preliminary injunction must be denied.

## **CONCLUSION**

For the foregoing reasons, this Court should do two things: grant Defendant's motion to dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and deny Plaintiffs' motion for a preliminary injunction.

Dated: Albany, New York
      February 18, 2022

                                     LETITIA JAMES
                                     Attorney General
                                     State of New York
                                     *Attorney for the Defendant*
                                     The Capitol
                                     Albany, New York 12224

                                     By: *Michael McCartin*
                                     Michael G. McCartin, Of Counsel
                                     Assistant Attorney General | Special Counsel
                                     Bar Roll No. 511158
                                     Tel.: (518) 776-2620
                                     Michael.McCartin@ag.ny.gov

TO:  All counsel of record (*via* e-filing)