**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NATIONAL SHOOTING SPORTS FOUNDATION,**
**INC.; BERETTA U.S.A. CORP.; DAVIDSON'S, INC.;**
**GLOCK INC.; CENTRAL TEXAS GUN WORKS;**
**HORNADY MANUFACTURING COMPANY;**
**LIPSEY'S, LLC; OSAGE COUNTY GUNS LLC;**
**RSR GROUP, INC.; SHEDHORN SPORTS, INC.;**
**SIG SAUER, INC.; SMITH & WESSON INC.;**
**SPORTS SOUTH LLC; SPRAGUE'S SPORTS INC.;**
**and STURM, RUGER & COMPANY, INC.,**

                                             **Plaintiffs,**
         **vs.**                                                    **1:21-cv-1348**
                                                                    **(MAD/CFH)**
**LETITIA JAMES,** *in her official capacity*,

                                             **Defendant.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**SHOOK HARDY & BACON, LLP**                **SCOTT A. CHESIN, ESQ.**
1325 Avenue of the Americas, 28th Floor
New York, New York 10019
Attorneys for Plaintiffs

**SHOOK, HARDY & BACON LLP**                **AMY M. CROUCH, ESQ.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Attorneys for Plaintiffs

**SHOOK, HARDY & BACON LLP**                **ELLIOTT M. DAVIS, ESQ.**
1800 K Street NW – Suite 1000
Washington, D.C. 20006
Attorneys for Plaintiffs

**OFFICE OF ATTORNEY**                       **MICHAEL G. McCARTIN, AAG**
**GENERAL – ALBANY**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

1

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs, fourteen gun industry members and a trade association, initiated this action on December 16, 2021, against Defendant Attorney General Letitia James.  *See* Dkt. No. 1. Plaintiffs' complaint generally alleges that N.Y. Gen. Bus. Law §§ 898-a–e is unconstitutional. *See id.*  Along with the complaint, Plaintiffs also filed a motion for a preliminary injunction on December 16. 2021.  *See* Dkt. No. 2.  On February 18, 2022, Defendant filed a motion to dismiss all of Plaintiffs' claims.  *See* Dkt. No. 35.  For the following reasons, Defendant's motion to dismiss is granted and Plaintiffs' motion for a preliminary injunction is denied.

### II. BACKGROUND

On July 6, 2021, New York enacted a law to hold gun industry members[1] civilly liable for "public nuisance[s]."  N.Y. Gen. Bus. Law §§ 898-a–e ("§ 898").  Specifically, the law states as follows:

> 1. No gun industry member, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain or contribute to a condition in New York state that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a qualified product.
>
> 2. All gun industry members who manufacture, market, import or offer for wholesale or retail sale any qualified product in New York state shall establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state.

---

[1] "[A] person, firm, corporation, company, partnership, society, joint stock company or any other entity or association engaged in the sale, manufacturing, distribution, importing or marketing of firearms, ammunition, ammunition magazines, and firearms accessories."  N.Y. Gen. Bus. Law § 898-a(4).

*Id.* § 898-b.  Violation of either provision resulting in "harm to the public," regardless of "whether the gun industry member acted for the purpose of causing harm to the public," is deemed by the statute a public nuisance.  *Id.* § 898-c(1), (2).  Section 898 is enforced by the New York Attorney General, "a city corporation counsel on behalf of the locality," or "[a]ny person, firm, corporation or association that has been damaged as a result of a gun industry member's acts or omissions in violation of this article."  *Id.* §§ 898-d, e.

On December 16, 2021, Plaintiffs filed a complaint and a motion for a preliminary injunction.  *See* Dkt. Nos. 1, 2.  Plaintiffs seek a declaratory judgment that § 898 is unconstitutional and an injunction enjoining Defendant from enforcing the act.  *Id.*  Plaintiffs argue that § 898 is unconstitutional for three reasons: (1) it is preempted by the federal Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 5921; (2) it violates the dormant Commerce Clause; and (3) it is void for vagueness.  *See* Dkt. No. 2-1 at 17.

### III. DISCUSSION

**A.      Failure to State a Claim**

*1. Standard of Review*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are

neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558 or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

### 2. Preemption

The Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, "'invalidates state laws that interfere with, or are contrary to federal law.'" *Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008) (quotation omitted). Defendant moves to dismiss Plaintiffs' claim that § 898 is preempted by the PLCAA. There are three different types of preemption:

> (1) express preemption, where Congress has expressly preempted
> local law; (2) field preemption, where congress has legislated so

> comprehensively that federal law occupies an entire field of
> regulation and leaves no room for state law; and (3) conflict
> preemption, where local law conflicts with federal law such that it
> is impossible for a party to comply with both or the local law is an
> obstacle to the achievement of federal objectives.

*N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (citations and

quotations omitted).  Plaintiffs argue that § 898 is expressly preempted and conflicts with federal

objectives.  *See* Dkt. No. 1 at ¶¶ 74-91.

### a. Express Preemption

The PLCAA expressly preempts "qualified civil liability action[s]," 15 U.S.C. § 7902(a),

which are defined as a "civil action or proceeding or an administrative proceeding brought by any

person against a manufacturer or seller of a qualified product, or a trade association … resulting

from the criminal or unlawful misuse of a qualified product by the person or a third party."  15

U.S.C. § 7903(5).  Plaintiffs contend that § 898 creates qualified civil liability actions and is

therefore expressly preempted by the PLCAA.  The PLCAA, however, excludes from the

definition of qualified civil liability action, known as the "predicate exception," the following:

> an action in which a manufacturer or seller of a qualified product
> knowingly violated a State or Federal statute applicable to the sale
> or marketing of the product, and the violation was a proximate
> cause of the harm for which relief is sought, including—
>
> > (I) any case in which the manufacturer or seller knowingly
> > made any false entry in, or failed to make appropriate entry
> > in, any record required to be kept under Federal or State law
> > with respect to the qualified product, or aided, abetted, or
> > conspired with any person in making any false or fictitious
> > oral or written statement with respect to any fact material to
> > the lawfulness of the sale or other disposition of a qualified
> > product; or
> >
> > (II) any case in which the manufacturer or seller aided,
> > abetted, or conspired with any other person to sell or
> > otherwise dispose of a qualified product, knowing, or having
> > reasonable cause to believe, that the actual buyer of the

> qualified product was prohibited from possessing or
> receiving a firearm or ammunition under subsection (g) or
> (n) of section 922 of Title 18;

15 U.S.C. § 7903(5)(A)(iii).  Because § 898 establishes liability against gun industry members resulting from the criminal or unlawful misuse of a firearm, it is expressly preempted by the PLCAA unless it falls within the predicate exception.

Following the passage of the PLCAA, the Second Circuit discussed the predicate exception at length in *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008).  The court discussed whether New York's general public nuisance statute, N.Y. Penal Law § 240.45, was "applicable to" the sale or marketing of firearms within the meaning of the predicate exception.  The Second Circuit held the term "applicable to" in the predicate exception "to mean statutes that clearly can be said to regulate the firearms industry[.]"  *Beretta*, 524 F.3d at 402.  In reaching its conclusion, the court noted that "the term 'applicable' must be examined in context." *Id.* at 401.  Then, because both parties relied on "a reasonable meaning of the term 'applicable,'" the court looked at "canons of statutory interpretation to help resolve the ambiguity."  *Id.* (internal quotations omitted).  Ultimately, the court held that New York's general public nuisance statute was not "applicable to the sale or marketing of [firearms]" within the meaning of the predicate exception and was, therefore, preempted by the PLCAA.  *Beretta*, 524 F.3d at 399–404.

The court reached its conclusion by relying on the *noscitur a sociis*[2] and *ejusdem generis*[3] canons of statutory construction.  The court interpreted the general language of "applicable to" in

---

[2] "As we noted in *United States v. Dauray*, 215 F.3d 257 (2d Cir. 2000), 'the meaning of doubtful terms or phrases may be determined by reference to their relationship with other associated words or phrases (*noscitur a sociis*).'"  *Beretta*, 524 F.3d at 401.

[3] "Where general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Yates v. United States*, 574 U.S. 528, 545 (2015) (internal quotations and alternations omitted).

section 7903(5)(A)(iii) by noting that the examples which follow "including" are "specific language referring to statutes imposing record-keeping requirements on the firearms industry … and prohibiting firearms suppliers from conspiring with or aiding and abetting others in selling firearms directly to prohibited purchasers." *Id.* (citing 15 U.S.C. § 7903(5)(A)(iii)(I)-(II)).

The Second Circuit also looked to the purpose and legislative history of the PLCAA. *Id.* at 402-404. Congress stated the purpose of the statute was

> [t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearms products or ammunition products by others when the product functioned as designed and intended.

15 U.S.C. § 7901(b)(1). Moreover, Congress found

> businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

15 U.S.C. § 7901(a)(5). Therefore, the court stated, "[w]e think Congress clearly intended to protect from vicarious liability members of the firearms industry who engage in the lawful design, manufacture, marketing, distribution, importation, or sale of firearms." *Beretta*, 524 F.3d at 402 (internal quotations omitted).

Accordingly, the court held that applying the predicate exception to New York's general public nuisance law "leads to a far too-broad reading of the predicate exception." *Id.* at 403. "Such a result would allow the predicate exception to swallow the statute, which was intended to shield the firearms industry from vicarious liability for harm caused by firearms that were

lawfully distributed into primary markets." *Id.* at 403.  The *Beretta* court therefore limited the predicate exception to "statutes that actually regulate the firearms industry." *Id.* at 404.

The general public nuisance statute from *Beretta* and § 898 here are generally similar in content, except § 898 substitutes the term "gun industry member" for "person."  Defendant contends that because § 898 expressly regulates firearms, it comports with *Beretta*'s definition of "applicable to."  Plaintiffs, however, argue that the reasoning behind *Beretta* supports a finding that that § 898 is excluded from the predicate exception.

The *Beretta* court was engaged in a narrow question of statutory interpretation.  To determine whether New York's general public nuisance law fell within the predicate exception, the *Beretta* court was required to resolve the ambiguity of the term "applicable to."  *Beretta*, 524 F.3d at 400-01.  Only to resolve that ambiguity did the court engage in difficult questions of statutory construction.  Here, Plaintiffs employ the same tools as the *Beretta* court, but it is unclear for what job.  Similar to *Beretta*, the question before this Court is whether § 898 is "applicable to the sale or manufacture of [firearms]."  But Plaintiffs offer no suggestion for how to interpret or define "applicable to" such that § 898 is excluded.  Rather, Plaintiffs argue in the abstract that § 898 is not the type of law that Congress intended to authorize with the predicate exception, untethered from the text of the predicate exception itself.

Congress authorized lawsuits against gun industry members for "knowingly violat[ing] a State or Federal statute applicable to the sale or marketing of the product."  The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254–55 (1992).  Here, Plaintiffs identify no ambiguity in the predicate

exception that leads to the exclusion of § 898.  In fact, many of the Plaintiffs here were the same parties in *Beretta* that argued that "applicable to" means expressly regulates.

No reasonable interpretation of "applicable to" can exclude a statute which imposes liability exclusively on gun manufactures for the manner in which guns are manufactured, marketed, and sold.  In *Beretta*, the Second Circuit provided clear instruction on whether a statute is "applicable to" the firearm industry within the meaning of the predicate exception, whether it "encompass statutes (a) that expressly regulate firearms, or (b) that courts have applied to the sale and marketing of firearms."  *Beretta*, 524 F.3d at 404.  Therefore, the only question before this Court is whether § 898 expressly regulates firearms.  Because § 898 establishes liability exclusively on gun industry members for certain actions—such as the failure to institute "screening, security, inventory and other business practices to prevent thefts of qualified products as well as sales of qualified products to straw purchasers, traffickers, persons prohibited from possessing firearms under state or federal law, or persons at risk of injuring themselves or others," § 898-a(1)—the Court holds that § 898 expressly regulates firearms.[4]  Therefore, Plaintiffs' express preemption claim is dismissed.

### b. Conflict Preemption

Conflict preemption can arise in two situations: when "it is 'impossible for a private party to comply with both state and federal requirements' ... or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Freightliner*

---

[4] The Court notes that Plaintiffs agree that § 898 expressly regulates firearms; their entire dormant Commerce Clause claim is necessarily predicated on it.  *See* Dkt. No. 1 at ¶ 104 ("Specifically, the Act seeks to regulate the conduct of the 97.1% of FFLs operating outside New York by declaring conduct fully lawful where it occurred unlawful in New York"); Dkt. No. 2-1 at 20 ("New York's attempt to regulate the nationwide firearm industry would still violate the Constitution because it discriminates against, attempts to control, and imposes severe burdens on interstate commerce").

*Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (quotation omitted).  Here, Plaintiffs allege only

obstacle preemption.  *See* Dkt. No. 1 at ¶¶ 85-91.  Obstacle preemption "precludes state law that

poses an 'actual conflict' with the overriding federal purpose and objective."  *In re Methyl Tertiary*

*Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 101 (2d Cir. 2013) (quoting *Mary Jo C. v.*

*N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 162 (2d Cir. 2013)).  "What constitutes a sufficient

obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and

identifying its purpose and intended effects."  *Id.*  "The burden of establishing obstacle

preemption … is heavy: the mere fact of tension between federal and state law is generally not

enough to establish an obstacle supporting preemption, particularly when the state law involves

the exercise of traditional police power."  *Id.* at 101-02 (internal quotation marks and brackets

omitted).  "Indeed, federal law does not preempt state law under obstacle preemption analysis

unless the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or

consistently stand together."  *Id.* at 102 (internal quotation marks omitted).

   Here, the PLCAA broadly preempts civil actions "brought by any person against a

manufacturer or seller of a [firearm] … resulting from the criminal or unlawful misuse of a

qualified product by the person or a third party."  15 U.S.C. § 7903(5).  It then excludes from

preemption "an action in which a manufacturer or seller of a [firearm] knowingly violated a State

or Federal statute applicable to the sale or marketing of the product."  15 U.S.C. § 7903(5)(A)(iii).

As discussed above, the text of the statute does not expressly preempt § 898.  The lack of express

preemption, however, "does not bar the ordinary working of conflict pre-emption principles."

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000).

   Nonetheless, "Congress' enactment of a provision defining the pre-emptive reach of a

statute implies that matters beyond that reach are not pre-empted."  *Cipollone v. Liggett Grp.,*

*Inc.*, 505 U.S. 504, 517 (1992).  "Given that Congress specifically preserved such authority for the States, it stands to reason that Congress did not intend to prevent the States from using appropriate tools to exercise that authority."  *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 600–01 (2011).  Here, the preemptive scope of the PLCAA and its predicate exception give a "reliable indicium of congressional intent with respect to state authority."  *Cipollone*, 505 U.S. at 517.  Congress clearly intended to allow state statutes which regulate the firearms industry.  *See* 15 U.S.C. § 7903(5)(A)(iii) (exempting from preemption "an action in which a manufacturer or seller of a [firearm] knowingly violated a *State or Federal statute* applicable to the sale or marketing of the product") (emphasis added).  "Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts that pre-empts state law.'"  *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (quoting *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 111 (1992) (Kennedy, J., concurring in part and concurring in judgment)).

Still, a review of the statute as a whole and the legislative history show that a state statute establishing liability for improper sale or marketing of firearms is not an obstacle to any congressional objective of the PLCAA.  For example, the preamble states that actions against gun industry members "do not represent a bona fide expansion of the common law."  15 U.S.C. § 7901(a)(7).  The PLCAA also targets the expansion of generally applicable laws, such as New York's general public nuisance statute discussed in *Beretta*, as an "attempt to use the judicial branch to circumvent the Legislative branch of government."  *Id.* § 7901(a)(8).  But there is no statutory indication in the PLCAA for Plaintiffs' claim that Congress intended to preempt state statutes which expressly regulate firearms—much less establish the "'high threshold [that] must be

11

met if a state law is to be preempted for conflicting with the purposes of a federal Act.'" *Whiting*, 563 U.S. at 607 (quoting *Gade*, 505 U.S. at 110).  Defendant's motion to dismiss the conflict preemption claim is therefore granted.

### 3. Dormant Commerce Clause

The Commerce Clause provides the federal government, through Congress, with the power "[t]o regulate Commerce ... among the several States."  U.S. Const., art. I, § 8, cl. 3.  This express grant of power to Congress contains "a further, negative command, known as the dormant Commerce Clause 'which limits the power of local governments to enact laws affecting interstate commerce.'"  *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 47 (2d Cir. 2007) (citing *Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979) (internal quotations and citations omitted)).  "The negative or dormant implication of the Commerce Clause prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace."  *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997).  Additionally, the dormant Commerce Clause "'precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State.'"  *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642–43 (1982)).

Accordingly, a state statute violates the dormant Commerce Clause if it: (1) "clearly discriminates against interstate commerce in favor of intrastate commerce"; (2) "imposes a burden on interstate commerce incommensurate with the local benefits secured"; or (3) "has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question." *Grand River Enters. Six Nations v. Boughton*, 988 F.3d 114, 123 (2d Cir. 2021) (citation omitted).  Plaintiffs allege that § 898 is unconstitutional in all three ways.

"In analyzing a challenged local law under the dormant Commerce Clause, we first determine whether it clearly discriminates against interstate commerce in favor of intrastate commerce, or whether it regulates evenhandedly with only incidental effects on interstate commerce." *Town of Southold*, 477 F.3d at 47.  If the state law "clearly discriminates" it is "virtually invalid per se and will survive only if it is 'demonstrably justified by a valid factor unrelated to economic protectionism.'" *Id.* (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992)).  A law that does not "clearly discriminate" but still "imposes a burden on interstate commerce" is "subject to the more permissive balancing test under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), and will be struck down if the burden imposed on interstate commerce clearly exceeds the putative local gains." *Id.*  Lastly, the Court will analyze whether § 898 violates *Healy*'s extraterritoriality principles.  *See Healy*, 491 U.S. 324.

### a. Whether § 898 Clearly Discriminates Against Out-of-State Commerce

Plaintiffs argue that § 898 is facially discriminatory.  The term discrimination in this context "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."  *Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 99 (1994).  Here, § 898 regulates "qualified products."  N.Y. Gen. Bus. Law § 898-b.  "Qualified product[s]," in turn, are defined "as the same meaning as defined in 15 U.S.C. section 7903(4)," which is "a firearm … or ammunition … or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." *Id.* § 898-a(6) (quoting 15 U.S.C. § 7903(4)).  Plaintiffs therefore argue that because § 898 only applies to interstate commerce and is not applicable to wholly intrastate gun industry members, based on the definition of "qualified products," it is facially discriminatory.

Discrimination, however, "assumes a comparison of substantially similar entities." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298–99 (1997).  This is because, as the Supreme Court has explained, "[t]he central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994).  "The fundamental objective of the dormant Commerce Clause is to 'preserv[e] a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors.'" *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 208 (2d Cir. 2003) (quoting *Gen. Motors Corp.*, 519 U.S. at 299).  Therefore, in order to state a dormant Commerce Clause claim on the basis of discrimination, Plaintiffs are required to "'identify an[ ] in-state commercial interest that is favored, directly or indirectly, by the challenged statutes at the expense of out-of-state competitors.'" *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009) (quoting *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 169 (2d Cir. 2005)).  "[I]n the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market there can be no local preference." *Gen. Motors Corp.*, 519 U.S. at 300.

Here, there can be no discrimination against out-of-state commerce, and in favor of in-state commerce, because Plaintiffs have not alleged that any in-state commerce exists.  Plaintiffs allege that of the 131,952 federal firearms licensees in the country, 3,827 of them operate in the state of New York.  Dkt. No. 1 at ¶ 58.  Plaintiffs, however, do not allege that § 898 does not apply to these 3,827 federal firearms licensees.  As Defendant points out, there is likely no gun industry member who is exempt from § 898 because it participates in wholly in-state commerce.  The definition of qualified product under § 898 includes "any component part of a firearm … that

has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4). Even if a New York State gun industry member manufactured a firearm in New York and sold it exclusively in New York, it would still be subject to § 898 if any component part of that firearm originated out-of-state. *Id.* "[T]he firearms industry is interstate—indeed, international—in nature." *Beretta*, 524 F.3d at 394. Plaintiffs have not alleged, nor could they, that a New York State gun industry member that is exempt from § 898 exists.

Because there is no in-state competitor, the state of New York cannot discriminate against out-of-state commerce and in favor of in-state commerce. *See Town of Southold*, 477 F.3d at 49 (finding no discrimination where the law "does not give any advantage to local businesses at the expense of out-of-state competitors"); *Angus Partners LLC v. Walder*, 52 F. Supp. 3d 546, 562 (S.D.N.Y. 2014) ("Plaintiffs fail to satisfy their burden of identifying an in-state interest that is benefitted or an out-of-state competitor that is harmed"). Defendant's motion to dismiss Plaintiffs' claim that § 898 violates that dormant Commerce Clause as facially discriminatory is therefore granted.

### b. Whether § 898 Places an Undue Burden on Interstate Commerce

Because § 898 does not clearly discriminate against interstate commerce, the Court "next assess[es] its validity under the *Pike* balancing test." *Town of Southold*, 477 F.3d at 50. Under *Pike*, a challenged regulation will be upheld unless it "places a burden on interstate commerce that is clearly excessive in relation to the putative local benefits." *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1282 (2d Cir. 1995). As the Supreme Court has noted, "[s]tate laws frequently survive this *Pike* scrutiny." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 339 (2008) (collecting cases).

15

"The *Pike* test is often directed at differentiating 'protectionist measures' from those that 'can fairly be viewed as ... directed to legitimate local concerns, with effects upon interstate commerce that are only incidental.'" *VIZIO, Inc. v. Klee*, 886 F.3d 249, 259 (2d Cir. 2018) (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978)).  With this principle in mind, the Second Circuit previously denied a *Pike* claim where the plaintiff was unable to "identify any in-state commercial interest that is favored, directly or indirectly." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 218 (2d Cir. 2004).  "To be prohibited, a statute still must favor an in-state commercial interest over a corresponding out-of-state commercial interest, an element absent in the present matter." *Id.* at 219.  As the Court stated in the preceding section, § 898 does not favor any in-state commercial interests.  There are no in-state commercial interests that benefit from § 898.  Accordingly, Plaintiffs' *Pike* claim is denied.

### c. Whether § 898 Impermissibly Regulates Out-of-State Commerce

A local statute can also violate the dormant Commerce Clause if it "directly controls commerce occurring wholly outside the boundaries of a State." *Healy*, 491 U.S. at 336.  The Second Circuit has stated that, "when assessing a plaintiff's extraterritoriality theory, we focus squarely on whether the state law has 'the practical effect of requiring out-of-state commerce to be conducted at the regulating state's direction." *VIZIO*, 886 F.3d at 255 (quoting *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 193 (2d Cir. 2007)).  "In that analysis, courts shall not only consider the effect of the challenged law, but also 'what effect would arise if not one, but many or every State adopted similar legislation.'" *Id.* (quoting *Healy*, 491 U.S. at 336).  Courts, however, "have consistently recognized that '[t]he mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the

16

Constitution forbids.'" *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 67 (2d Cir. 2010) (quoting *Osborn v. Ozlin,* 310 U.S. 53, 62 (1940)).

Plaintiffs allege that § 898 impermissibly regulates out-of-state commerce by "declaring conduct fully lawful where it occurred unlawful in New York." Dkt. No. 1 at ¶ 104. Plaintiffs argue that if this type of statute were permissible, then gun industry members would have to comply with the strictest state restrictions "regardless of federal law or the law of the individual state of operation, or face liability." *Id.* at ¶ 106. The compliance with regulations regarding the safe manufacturing, marketing, or selling of a product, however, is wholly outside the concerns of the extraterritoriality-dormant Commerce Clause doctrine.

As the Second Circuit stated, statutes that the Supreme Court has struck down as impermissibly extraterritorial "went a step further, controlling in-state and out-of-state pricing of goods going into the state. These statutes did so by making specific reference to the terms of such pricing—terms which burdened out-of-state actors more than in-state actors—and attaching in-state consequences where the pricing terms violated the statutes." *Freedom Holdings, Inc.*, 357 F.3d at 221 (2d Cir. 2004) (citing *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 519 (1935); *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 575–76 (1986); *Healy*, 491 U.S. at 326). Rather, this line of cases "concerns only 'price control or price affirmation statutes' that involve 'tying the price of … in-state products to out-of-state prices.'" *Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1174 (10th Cir. 2015) (Gorsuch, J.) (quoting *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003)).

For example, the Second Circuit rejected a claim where the state statute "merely influence[d] national pricing decisions, rather than directly control[led] out-of-state commerce." *VIZIO*, 886 F.3d at 255. In *VIZIO*, the court held that no dormant Commerce Clause claim

existed where the state law "does not 'mak[e] specific reference to the terms of ... pricing' and
does not 'attach[ ] in-state consequences where the pricing terms violate[ ] the statute[ ].'" *VIZIO*,
886 F.3d at 255 (quoting *Freedom Holdings*, 357 F.3d at 221) (alterations in original). And in
*Grand River Enterprises Six Nations, Ltd. v. Boughton*, the court stated that where the effect of a
local statute was "indirect as well as incidental to the purpose of the statute" then it is "not
analogous to that of the economic regulation held to violate the dormant Commerce Clause in
*Healy*." 988 F.3d 114, 124 (2d Cir. 2021).

Here, § 898 is a regulation targeted at the manufacturing, marketing, and sale of firearms
in New York State. "[R]egulations that touch upon safety … are those that the Court has been
most reluctant to invalidate." *Kassel v. Consol. Freightways Corp. of Delaware*, 450 U.S. 662,
670 (1981) (internal quotations omitted); *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 194 (2d Cir.
2007) ("Were we to accept [plaintiff]'s theory, almost every state consumer protection law would
be considered 'protectionist' in a sense prohibited by the Constitution. The meaning of the
dormant Commerce Clause is far narrower"). Section 898 in no way differs from the
extraterritorial effect of the myriad of safety state laws and regulations with which every industry
must comply. *See Instructional Sys. v. Comput. Curriculum Corp.*, 35 F.3d 813, 825 (3d Cir.
1994) ("[I]t is inevitable that a state's law, whether statutory or common law, will have
extraterritorial effects"); *Freedom Holdings*, 357 F.3d at 220–21 ("The extraterritorial effect
described by appellants amounts to no more than the upstream pricing impact of a state
regulation"). Accordingly, § 898 does not violate the extraterritoriality principles of the dormant
Commerce Clause.

### 4. Void for Vagueness

The Fourteenth Amendment's guarantee that no state shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, entitles a person to "'be informed as to what [a law] commands or forbids.'" *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). The void for vagueness doctrine requires first that "'laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited'" and second that "laws contain 'minimal guidelines to govern law enforcement.'" *Id.* at 65–66 (quoting *Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006)) (other quotation omitted); *see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983); *Farid v. Ellen*, 593 F.3d 233, 240 (2d Cir. 2010). A statute or rule is inadequate under the second criterion when it "fails to provide sufficiently explicit standards for those who apply it," and "impermissibly delegates basic policy matters … for resolution on an ad hoc and subjective basis." *Farid*, 593 F.3d at 243 (citations omitted).

Facial void for vagueness challenges, like Plaintiffs bring here, "are generally disfavored." *Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir. 2010); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) (holding that a pre-enforcement challenge constitutes a "'facial,' rather than 'as-applied,' challenge"). As the *Dickerson* court stated, facial challenges "run contrary to the fundamental principles of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Dickerson*, 604 F.3d at 741. Moreover, facial challenges "often rest on speculation." *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). Accordingly, limiting facial challenges "serves institutional interests by ensuring that the issues before the court are concrete and sharply presented." *Id.* (quoting *Thibodeau*, 486 F.3d at 71).

19

"[T]he degree of vagueness tolerated in a statute varies with its type: economic regulations are subject to a relaxed vagueness test, laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010). Plaintiffs argue that a facial challenge to § 898 is subject to a stringent standard because it "threatens to inhibit First and Second Amendment rights." Dkt. No. 43 at 26.

"When a statute is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006). But to the extent § 898 implicates First Amendment rights at all, the Supreme Court has noted, "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). Here, similarly to the village ordinance at issue in *Hoffman Estates*, § 898 "simply regulates business behavior[.]" *Id.* at 499. Such regulations of commercial speech are not subject to a heightened vagueness test. *See id.* at 496-500; *ACA Connects - Am.'s Commc'ns Ass'n v. Frey*, 471 F. Supp. 3d 318, 330 (D. Me. 2020).

Plaintiffs also claim § 898 inhibits their Second Amendment rights. The Second Circuit has noted two possible standards that may apply in evaluating facial challenges outside of the First Amendment context, but has declined to resolve the ambiguity. *See Dickerson*, 604 F.3d at 743-44; *New York State Rifle & Pistol Ass'n, Inc.*, 804 F.3d at 265–66 ("We have previously declined to specify a preference for either test, and we need not do so here, because the challenged provisions are sufficiently clear to survive a facial challenge under either approach");

*United States v. Rybicki*, 354 F.3d 124, 131 (2d Cir. 2003).  The first possible standard is that "such challenges are permitted only when 'no set of circumstances exists under which the [law] would be valid.'"  *Id.* at 743 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  The *Salerno* standard "effectively eliminates facial challenges outside of the First Amendment context that could not also be brought as an as-applied challenge, since any law that is unconstitutional in every set of circumstances is also necessarily unconstitutional when applied to any plaintiff."  *Id.* at 743-44; *see also Rybicki*, 354 F.3d at 129–30 (discussing decisions that have "held that when … the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only 'as applied'"); *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993) ("[V]agueness challenges that do not involve the First Amendment must be examined in light of the specific facts of the case at hand and not with regard to the statute's facial validity").

In *City of Chicago v. Morales*, 527 U.S. 41 (1999), however, a plurality of the Supreme Court expressed skepticism about the "no set of circumstances" standard enunciated in *Salerno* and upheld a facial vagueness challenge to an anti-loitering statute.  *Morales*, 527 U.S. at 55 n.22.  *Morales* upheld a facial vagueness challenge to an anti-loitering statute, which defined "loiter" as "to remain in any one place with no apparent purpose."  *Id.* at 47 n.2.  The Court first found that the freedom to loiter is a liberty interest protected by the substantive Due Process Clause.  *Id.* at 53-54.  Next, the Court differentiated the anti-loitering ordinance from the *Salerno* line of cases, stating "[t]his is not an ordinance that 'simply regulates business behavior and contains a scienter requirement.'"  *Id.* at 55 (quoting *Hoffman Estates*, 455 U.S. at 499).  Rather, the Court noted that the anti-loitering ordinance was a "criminal law that contains no *mens rea* requirement and infringes on constitutionally protected rights."  *Id.* (internal quotations omitted).  The Court

concluded that "[w]hen vagueness permeates the text of such a law, it is subject to facial attack." *Id.*

Here, the Court finds that *Morales* is not applicable to § 898.  Whereas *Morales* was concerned with a criminal statute with no *mens rea* requirement, § 898 imposes civil liability and requires the gun industry member to act "knowingly or recklessly."  N.Y. Gen. Bus. Law § 898-b(1).[5]  Central to the holding in *Morales* was that the anti-loitering statute did not "simply regulate[] business behavior[,]" unlike § 898.  *Morales*, 527 U.S. at 55.  Additionally, the anti-loitering statute had broad and indiscriminate impact on the constitutionally protected right to loiter, but § 898 has only attenuated effects on Second Amendment rights.  The statute limits the unreasonable "sale, manufacturing, importing or marketing" of firearms but does not directly "regulate the right of the people to keep and bear Arms."  N.Y. Gen. Bus. Law § 898-b(1); U.S. Const. amend. II.  In *Hoffman Estates*, for example, the Supreme Court noted that the "interest in displaying and marketing merchandise in the manner that the retailer desires" had only an "attenuated" impact on the freedom of speech.  *Vill. of Hoffman Ests.*, 455 U.S. 489, 496.  Similarly, the ability for gun industry members to sell, manufacture, import, and market firearms in the manner they desire, only has an attenuated impact on Second Amendment rights, if any.  *See also Kuck v. Danaher*, 822 F. Supp. 2d 109, 133 (D. Conn. 2011) (Applying *Salerno*, in part because, "[w]hile the statute at issue implicates a constitutional right, the Court does not believe the consequence complained of, namely revocation of a permit to carry a weapon outside of the home, is as severe as the deprivation of liberty occasioned by an arrest and incarceration"); *Sibley v. Watches*, 460 F. Supp. 3d 302, 316-17 (W.D.N.Y. 2020).  Accordingly, because *Morales* is not

---

[5] The Court notes that § 898-b(2) does not have a scienter requirement.  Nonetheless, the Court finds § 898-b(2) would satisfy any more stringent void for vagueness review.

applicable to Plaintiffs' claim, the Court must now determine whether there is "no set of circumstances under which" § 898 would be valid. *Salerno*, 481 U.S. at 745.

Section 898-b(1) states, "[n]o gun industry member, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain or contribute to a condition in New York state that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a qualified product."  The Court finds that this gives "the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Thibodeau*, 486 F.3d at 65.  "Statutes need not ... achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth.  The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States v. Holloway*, No. 20-578, 2022 WL 453370, *3 (2d Cir. Feb. 15, 2022) (quoting Arriaga v. Mukasey, 521 F.3d 219, 224 (2d Cir. 2008).

Here, there are clear "common understanding and practices" of what type of conduct § 898-b(1) prohibits.  The statute closely tracks the language of New York's current general public nuisance law, N.Y. Penal Law § 240.45, which has been good law since 1965.  Not only has N.Y. Penal Law § 240.45 never been held to be void-for-vagueness itself, but its over fifty years of existence elucidates and narrows the application § 898-b(1).  Given decades of applications of nearly identical language, it certainly cannot be said that there are "no set of circumstances under which" § 898 would be valid. *Salerno*, 481 U.S. at 745.

Even if the stricter *Morales* standard were to apply, the Court also does not believe the law is "permeated" with vagueness. *Morales*, 527 U.S. at 55.  Reading the provision as a whole, a gun industry member is required to "knowingly or recklessly create, maintain or contribute to a condition," through the "sale, manufacturing, importing or marketing," that is "unlawful in itself

23

or unreasonable under all the circumstances" that "endangers the safety or health of the public."

N.Y. Gen. Bus. Law § 898-b(1).  Plaintiffs argue that the terms "unreasonable under all the

circumstances" and "contribute to a condition" imbed the statute with vagueness.  *See* Dkt. No. 2-

1 at 29.  The Court disagrees.  Courts regularly provide meaning to the term unreasonable.

*United States v. Hsu*, 40 F. Supp. 2d 623, 628 (E.D. Pa. 1999) ("[A] statute is not void for

vagueness merely because it uses the word 'reasonable' or 'unreasonable'" (citing U.S. Const.

amend. IV)).  And whether an action contributed to a result is neither a vague nor esoteric inquiry.

*See, e.g.*, *Prunier v. City of Watertown*, 936 F.2d 677, 679 (2d Cir. 1991) ("Under New York law,

Prunier must prove that the City's negligence was a substantial contributing factor in producing

McDermott's injuries").

Section 898-b(2) also satisfies the vagueness inquiry.  That section requires that gun

industry members "establish and utilize reasonable controls and procedures to prevent its

qualified products from being possessed, used, marketed or sold unlawfully in New York state."

*Id.*  The statute defines "reasonable control and procedures" to mean:

> policies that include, but are not limited to: (a) instituting screening,
> security, inventory and other business practices to prevent thefts of
> qualified products as well as sales of qualified products to straw
> purchasers, traffickers, persons prohibited from possessing firearms
> under state or federal law, or persons at risk of injuring themselves
> or others; and (b) preventing deceptive acts and practices and false
> advertising and otherwise ensuring compliance with all provisions
> of article twenty-two-A of this chapter.

*Id.* § 898-a(2).  Within this definition, "deceptive acts and practices" and "false advertising" are

further defined in the New York Deceptive Trade Practice laws.  *See id.* §§ 898-a(1), (3); N.Y.

Gen. Bus. Law § 349 *et seq*.  This list of required conduct is far from "so vague and indefinite as

really to be no rule at all."  *Boutilier v. INS*, 387 U.S. 118, 123 (1967).  For example, in *Kuck*, the

court denied a facial vagueness challenge to a Connecticut handgun permitting law.  *See Kuck*,

822 F. Supp. 2d at 119-20.  The Connecticut statute listed ten statutory exclusions to eligibility and additionally included the requirement that "the applicant is a 'suitable person' to receive such a permit."  *Id.* at 120.  The court held that "suitable person" was not unconstitutionally vague because the "fundamental principle of statutory construction 'ejusdem generis' circumscribes the discretion of DPS and the Board and gives citizens adequate notice of who is and who is not eligible to receive a gun permit."  *Id.* at 132-33.  Therefore, the court denied the facial challenge because "[t]here are innumerable factual circumstances in which invocation of the suitability standard to revoke a person's pistol permit on the basis that he poses a danger to the public, even though he does not fall within one of the express statutory grounds for revocation, would be constitutionally valid."  *Id.* at 132.

Similarly, § 898-b(2) constitutionally applies to a wide range conduct, so it cannot be said that "no set of circumstances exists under which the [law] would be valid."  *Salerno*, 481 U.S. at 745.  It expressly applies to certain business practices, "intelligibly forbids a definite course of conduct," *United States v. Powell*, 423 U.S. 87, 93 (1975), and is therefore ill-suited for a facial challenge.  And even if the *Morales* standard were to apply to § 898-b(2), the Court finds that this section is not "permeated" with vagueness.  *Morales*, 527 U.S. at 55.  The use of "include, but not limited to" in the statute does not imbed it with vagueness, as Plaintiffs suggest.  *See, e.g.*, *Slattery v. Cuomo*, 531 F. Supp. 3d 547, 571 (N.D.N.Y. 2021); *United States v. Grande*, 353 F. Supp. 2d 623, 635 (E.D. Va. 2005) ("The Court rejects Defendant's argument that the 'as demonstrated by, but not limited to' language renders the factor unconstitutionally vague").  Accordingly, Defendant's motion to dismiss Plaintiffs' void-for-vagueness claim is granted.

**B.   Preliminary Injunction**

For the reasons discussed above, Defendant's motion to dismiss the complaint in its entirety is granted.  Plaintiffs' motion for a preliminary injunction is, therefore, denied as moot. *See, e.g., Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 111 (2d Cir. 2016) (affirming dissolution of a preliminary injunction where the claim underlying the injunction became moot); *McMillian v. Konecny*, No. 9:15 Civ. 0241, 2018 WL 813515, *2 (N.D.N.Y. Feb. 9, 2018) ("[W]here no complaint remains pending, no motion for a temporary restraining order or preliminary injunction remains available").

## IV. CONCLUSION

After careful review of the record, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** Defendant's motion to dismiss (Dkt. No. 35) is **GRANTED;** and the Court further

**ORDERS** that Plaintiffs' motion for a preliminary injunction (Dkt. No. 2) is **DENIED;** and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 25, 2022
        Albany, New York

Mae A. D'Agostino
U.S. District Judge